37303, 37333.   PLANTERS ELECTRIC MEMBERSHIP CORPORATION *v.* BURKE; and *vice versa.*

DECIDED SEPTEMBER 24, 1958—
REHEARING DENIED OCTOBER 20, 1958.

384

*H. Cliff Hatcher, Sharpe & Sharpe, Bouhan, Lawrence, Williams, Levy & McAlpin,* for plaintiff in error.

*Dekle & Dekle, G. C. Dekle, Jr., Congdon, Holley & Smith, W. P. Congdon, Eugene Holley,* contra.

QUILLIAN, Judge. ■ The defendant contends that the petition does not set forth a cause of action because its averments show no breach of duty by the defendant owed to the plaintiff's son. In support of this contention the defendant cites *Smith* v. *Ga. Power Co.,* 43 *Ga. App.* 210 (158 S. E. 371); *Bridges* v. *Ga. Power Co.,* 39 *Ga. App.* 400 (147 S. E. 589), and foreign authority. In the two cases cited the deceased child came in contact with electric wires which were insulated originally, but from which the insulation had worn, by climbing a tree on the property of another. Under the facts of those cases it was held that defendant power company had breached no duty it owed the injured child. The facts of the cases are dissimilar to those of this case, except that in those cases as in this case a child was injured by contact with an electric wire. The foreign authority is not persuasive because not in harmony with the holdings of the appellate courts of this State.

The allegations of the petition clearly allege the breach of a duty owed by the defendant to the plaintiff's son. *Welch* v. *City of Camilla,* 86 *Ga. App.* 609 (72 S. E. 2d 83); *Lamar Electric Membership Corp.* v. *Carroll,* 89 *Ga. App.* 440 (79 S. E. 2d 832). These cases thoroughly discuss the duty of those erecting power lines across the premises of another, and their liability for constructing the lines in such a manner that there is probability that others will come in contact with them and be injured.

The defendant recognizes in the brief presented to this court that general allegations are sufficient as against a general demurrer. It insists that in this case the general allegations are mere conclusions of the pleader and insufficient against special demurrer. The court's attention is called to the special demurrers that attack certain allegations of the petition charging negligence on the part of the defendant. The principle is recognized but is not applicable here. The petition set forth the

evidential facts upon which each act of negligence imputed to the defendant is based, and the facts alleged, if true, constitute negligence. The petitioner's averments show causal connection between the acts of negligence charged and the fatal injury of plaintiff's son. Thus the petition sufficiently shows the defendant's negligence was the proximate cause of the boy's death. The defendant by way of protesting the insufficiency of the petition insists that one who maintains a power line is not an insurer of the safety of others who may come in contact with it. As authority for the position, the holding in *Darden* v. *Mayor &c. of Washington*, 35 *Ga. App.* 777 (1) (134 S. E. 813) is cited: "That upon the trial of an action in tort for personal injuries received in coming in contact with a wire charged with a high voltage of electricity, which it was alleged hung down from a pole in a dangerous situation as a result of the defendant's negligence, the court did not err in submitting to the jury, as an issue of fact, whether or not the defendant was guilty of negligence as alleged." Nothing in that case is contrary to this opinion.

The defendant takes the position in the brief filed here that, the plaintiff's own contributory negligence proximately contributing to the death of her child, her right of recovery for the child's death is barred.

There is authority for the contention that where a parent permits the child to be exposed to imminent danger, or fails when the child is in the parent's presence to warn him of an obvious impending peril a recovery for the death of the child may be barred.

In *Atlanta & Charlotte Air-Line Ry. Co.* v. *Gravitt*, 93 *Ga.* 369 (3) (20 S. E. 550, 26 L. R. A. 553, 44 Am. St. R. 145), it is held that, "Where a father entrusts his minor son, a youth of tender years, to the care and custody of another, such person becomes the legal representative and agent of the father in discharging the duty which the law imposes upon the latter, of guarding and shielding the child from injury. Accordingly, if the child, by reason of the gross negligence of his custodian in taking him upon a high and dangerous trestle, is run over by a passenger-train and killed, such negligent conduct is, in law,

imputable to the father himself. Such custodian could not, however, properly be regarded as likewise the representative or agent of the child's mother. By express statute, in this State, the father is vested with the control of his minor child, and the mother is not accountable for the conduct of a custodian for him chosen by the father. Nor, in a suit by the mother in her own right, as authorized by special statute, is she chargeable with the negligence of the father, merely because of the conjugal relation existing between them."

A similar principle is pronounced in *Stamps* v. *Newton County*, 8 *Ga. App.* 229 (2) (68 S. E. 947) as follows: "While a mother who is compelled to earn her own living by her labor may not be required, in the exercise of due diligence, to be present at all times and personally overlook the care of her children, still she is responsible for the exercise of ordinary care for the safety of her child while the child is in her presence."

These cases are not applicable here. The petition that we now consider does not reveal that the child was in the plaintiff mother's presence or was of such tender age as to ordinarily require her constant care.

There is no allegation from which it can be fairly inferred that the mother was aware that the child intended to come in close proximity to the wires or would be in danger of coming in contact with them. Nor can it be inferred from the averments of the petition that the mother was chargeable with knowledge of the high voltage of the wires and the consequent danger that lurked in them. She did not necessarily know of the dangerous character of the wires simply because they were uninsulated. As a general rule a person of ordinary intelligence, a layman in the field of electricity is not credited with information concerning the dangerous character of wire placed in a position or strung at heights which indicate the wire is harmless.

The very fact that the defendant power company strung the wires in an uninsulated state, one within 10 feet and the other 12 feet of the ground across the barnyard of another indicated that the wires were harmless.

The court held in *Lamar Electric Membership Corp.* v. *Carroll*, 89 *Ga. App.* 440, 453, supra, that "there is nothing in the

petition to indicate that the plaintiff was aware that the wires were not insulated, or that they were of high voltage, or could apprehend for any other reason, that, if one of the pipes which he employed in his work should come in contact with them, he would be injured. It is a matter of common knowledge that a great many wires used, for instance, in telephonic communication are not charged with electric current of such voltage as would inflict injury upon a person in like circumstance. Merely seeing the wires strung over the property would not put the plaintiff on notice of a dangerous condition."

The same pronouncement is found in *Georgia Power Co.* v. *Leonard*, 187 *Ga.* 608, 615 (1 S. E. 2d 579): "This defendant's tower, on the other hand, was a picture of innocence to the uninformed. Properly insulated, it was utterly harmless, and this court cannot impute to this plaintiff knowledge of the physical laws which govern the tremendous force conveyed over it. His conduct placed him in a position of danger not inherent or apparent in the position which he occupied, but dangerous only because the defendant's equipment was not fully insulated. His act was one which would have resulted in no injury otherwise. . . This tower, from the very subtlety of the danger, was more dangerous than a score of trains. Its death-dealing power was not discoverable by exercising the senses of sight, hearing, or smell. Imperceptively and noiselessly it struck its victim and left him mutilated and burned before he had the slightest warning of what was at hand. We do not mean that plaintiff's conduct showed that care and foresight which might be expected of one familiar with the force which passed along these wires; but this court cannot impute to him such knowledge or hold him accountable therefor as a matter of law, and therefore barred of the privilege of submitting his case for consideration and determination by a jury in the light of all the circumstances."

Exception is taken to the trial court's overruling certain special demurrers. The only argument made in this court concerning these grounds is, "Much of the contention above has application to the special demurrers; therefore, in order to avoid repetition, we are submitting the special demurrers on the basis of their

context, without further argument, yet expressly not abandoning them."

A careful examination of the special demurrers overruled by the court reveals that the trial court's ruling in respect to them was correct.

■ The trial judge did not err in sustaining the demurrer directed to the averment alleging that the defendant was negligent in "maintaining and operating the power lines described in the petition at a height lower than that specified for this type of installation in the National Safety Code."

In the 1958 supplement of 18 Am. Jur., p. 68, § 113, it is stated, "The general rule that safety codes or rules promulgated by government departments or voluntary associations for their informative value do not have the force of law and are not admissible in evidence upon the subjects to which they relate, applies to bar the admission of such codes or rules on the issue of negligence in the installation and maintenance of electrical equipment. Safety rules issued by the Bureau of Standards of the Department of Commerce fall within this rule. In one state, however, the general rule is rejected and such authority is admitted. Thus safety rules of the Bureau of Standards are admitted as evidence of negligent installation of charged wires over the roof of a building. The fact that such authority is not sworn to, is met in this jurisdiction by the sworn evidence of an expert witness that such authority is esteemed by the professions as good authority on the subject."

There is no law or rule of any commission of this State empowered to formulate rules controlling the installation and maintenance of power lines requiring the installation of power lines in conformity with the National Safety Code. Thus the code does not prescribe a standard of prudence recognized by the laws of this State. A failure to comply with the code does not constitute negligence per se.

The code did not furnish a standard of ordinary care because it merely represents the opinions of witnesses not sworn in the cause. To permit it to be pleaded and admitted in evidence would preclude the exercise of the valuable right of cross-examination of the witnesses who compiled the code.

What is written here is not to be construed as a pronouncement that an expert witness may not predicate his opinion upon information gained from authentic and authoritative books as well as upon his own experience in the field of science and endeavor to which his testimony relates.

*Judgment on main bill affirmed. Judgment on cross-bill affirmed. Felton, C. J., and Nichols, J., concur.*