A99A1472. DAYOUB v. YATES-ASTRO TERMITE PEST CONTROL COMPANY.
(521 SE2d 600)

ELDRIDGE, Judge.

In 1994, Michael Dayoub, plaintiff-appellant, contracted with Mark One Construction ("Mark One"), defendant, to build an office building for him. Mark One persuaded Dayoub to use artificial stucco instead of real stucco on the exterior, and Dayoub agreed. Mark One used Southern Tile and Carpet of Valdosta, Inc. ("Southern Tile"), defendant, as the subcontractor that applied the exterior artificial stucco. Southern Tile used a product manufactured by Dryvit Systems, Inc., defendant, to clad the exterior walls of the office building in an exterior insulation and finishing system called Dryvi, which is a synthetic stucco.

An inherent problem of Dryvit is that it retains moisture in the insulating foam that is glued to the underlying wood framing, plywood, or oriented strand board ("OSB board"). The moisture creates a

substantial risk for termite infestation. The Dryvit, covering the exterior walls, was improperly extended from the roof line to the dirt and, in some places, below ground, which provided hidden termite access.

Yates-Astro Termite Pest Control Company ("Yates-Astro"), defendant-appellee, contracted to pre-treat the new building to create a chemical termite barrier, to provide a termite bond, and to do annual inspections for termite infestation and damage. In 1996, Dayoub discovered termite infestation had occurred throughout the new building under the moist insulation.

Dayoub sued all of the defendants; however, prior to trial, he settled with everyone except Yates-Astro. Dayoub went to trial against Yates-Astro on a negligence and breach of contract theory.

Dr. Macy Nolan III, an entomologist, was Dayoub's only expert witness. On voir dire of the expert in establishing his qualifications, it was shown that he had a Ph.D. in entomology; that he was in the business of consulting with pest control companies regarding termites; that he was familiar with pest control companies' methods and techniques, including Yates-Astro, with which he had consulted; that he worked with the Georgia Department of Agriculture inspectors regarding pest and termite control; and that he was familiar with the published standards of the National Pest Control Association ("NPCA") and the Georgia Pest Control Commission. Yates-Astro objected that Dr. Nolan was not competent to testify as an expert on pest and termite control, because he was not a licensed pest control operator. The trial court sustained such objection and would not allow Dr. Nolan to testify regarding the standards of care of the pest control industry regarding termites or any deviation from such standard.

Also, the trial court denied admission of the rules and regulations of the Georgia Pest Control Commission, because they were not certified. The trial court denied admission of the NPCA standards, because Dr. Nolan was not allowed to identify, authenticate, or explain them as part of his expert testimony. At the close of Dayoub's evidence, the trial court granted Yates-Astro's motion for directed verdict as to the issue of negligence.

The case went to a jury on breach of contract theory only, and a verdict was returned for $11,000. Dayoub's motion for new trial was denied.

1. Plaintiff contends that the trial court erred in limiting and excluding the testimony of a qualified expert witness. We agree.

The question of whether a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion. OCGA § 24-9-67; *Bales v. Shelton,* 197 Ga. App. 522, 525 (3) (399 SE2d 78) (1990);

see also *Carlock v. KMart Corp.*, 227 Ga. App. 356, 361 (3) (b) (489 SE2d 99) (1997); *Drummond v. Gladson*, 219 Ga. App. 521, 522 (1) (465 SE2d 687) (1995); *Goodman v. Lipman*, 197 Ga. App. 631 (1) (399 SE2d 255) (1990).

However, in this case, the trial court erred as a matter of law in requiring that an expert witness have a pest control operator's license before he was qualified to testify, although he had a Ph.D. in entomology; had experience and training in the pest control field; acted as a paid consultant to pest control companies, including the defendant; and was knowledgeable in the area of termite control. *Goodman v. Lipman*, supra at 631-632. Such license requirement is arbitrary and capricious and imposed a standard of qualification greater than that required by law. OCGA § 24-9-67; *In the Interest of C. W. D.*, 232 Ga. App. 200, 206-207 (3) (501 SE2d 232) (1998); *In the Interest of S. T.*, 201 Ga. App. 37, 38-39 (1) (410 SE2d 312) (1991); *Goodman v. Lipman*, supra at 631-632. "The possession of a license in Georgia does not go to qualification as an expert witness but may go to the weight and credibility that a jury gives to such expert's opinion." *In the Interest of C. W. D.*, supra at 206-207; accord *Goodman v. Lipman*, supra at 631-632. Further, the trial judge failed to exercise his discretion but, instead, excluded the expert witness for lack of a license; failure to exercise discretion is, in fact, a manifest abuse of discretion when the expert is qualified. See *Drummond v. Gladson*, supra at 522; *Goodman v. Lipman*, supra at 631-632.

> The requirements for qualification as an expert witness are minimal; generally, nothing more is required to qualify an expert than evidence that the person has been educated in a particular trade, science, or profession. Formal education or training in an area of expertise is not necessary, provided the witness possesses the qualifications of such area of expertise through skill and experience. It is the possession of special knowledge derived either from experience, study, or both in a field of expertise that makes one an "expert." Thus, an expert witness can express an opinion on a matter which comes within the person's qualifications.

(Citations omitted.) *In the Interest of C. W. D.*, supra at 206.

2. Plaintiff also contends that the trial court erred in excluding applicable rules, regulations, and nationally published standards on the issue of negligence. While Division 1 requires a new trial, the issues raised by this enumeration are highly likely to occur on retrial; therefore, we will address them.

(a) A trial court must take judicial notice of rules and regulations of the State of Georgia that are published under authority by the Sec-

retary of State. OCGA § 24-1-4. Pursuant to the Administrative Procedure Act (APA), the Georgia Department of Agriculture, Pest Control Commission, must promulgate all of its rules and regulations as prescribed by said Act. OCGA §§ 50-13-2 (1) and (6); 50-13-3; see also *Orkin Exterm. Co. v. Blackmon*, 229 Ga. 146, 149 (5) (190 SE2d 43) (1972). All such rules and regulations must be published by the Secretary of State as the Rules and Regulations of the State of Georgia. OCGA §§ 50-13-3 (b); 50-13-5; 50-13-7. Therefore, such rules and regulations were published by the Secretary of State under statutory authority within the meaning of OCGA § 24-1-4. Judicial notice of the rules and regulations promulgated under the APA and published under authority must be taken by the trial court. OCGA §§ 24-1-4; 50-13-8; *Owens v. Ga. Underwriting Assn.*, 223 Ga. App. 29, 32 (3) (476 SE2d 810) (1996); *Blossman Gas Co. v. Williams*, 189 Ga. App. 195, 200-201 (5) (375 SE2d 117) (1988); *Cullers v. Home Credit Co.*, 130 Ga. App. 441, 443 (3) (203 SE2d 544) (1973).

Plaintiff's counsel requested that the trial court take judicial notice of the Pest Control Commission rules and regulations. See 10 Rules & Regulations of the State of Georgia, Part 2: §§ 620-4-.01 et seq.; 620-6-.01 et seq. However, the trial court erroneously believed that it lacked authority to do so and denied the motion to take judicial notice. Since such rules and regulations were some evidence of defendant's deviation from the standard of care and possible violation of the rules and regulations, the error was harmful.

(b) The NPCA standards are private; as such, private standards are not admissible without expert testimony to identify, authenticate, and explain them. *Planters Elec. Membership Corp. v. Burke*, 98 Ga. App. 380, 389-390 (2) (105 SE2d 787) (1958).

> The general rule that safety codes or rules promulgated by government departments or voluntary associations for their informative value do not have the force of law and are not admissible in evidence upon the subjects to which they relate, applies to bar the admission of such codes or rules on the issue of negligence[.] . . . The fact that such authority is not sworn to, is met in this jurisdiction by the sworn evidence of an expert witness that such authority is esteemed by the professions as good authority on the subject. . . . What is written here is not to be construed as a pronouncement that an expert witness may not predicate his opinion upon information gained from authentic and authoritative books as well as upon his own experience in fields of science and endeavor to which his testimony relates.

(Citations and punctuation omitted.) Id. at 389-390 (2). "Generally

speaking, expert testimony as to the practices of an industry is admissible, as is expert testimony as to whether a particular condition is safe or unsafe." (Citations and punctuation omitted.) *Gilbert v. CSX Transp.*, 197 Ga. App. 29, 31 (1) (397 SE2d 447) (1990); see also *Anderson v. Turton Dev.*, 225 Ga. App. 270, 273 (1) (483 SE2d 597) (1997); *Wooten v. Central Ga. Elec. Membership Corp.*, 214 Ga. App. 290, 291 (447 SE2d 672) (1994). Thus, the expert witness can testify regarding national standards, but the standards are not admissible alone without such predicate expert testimony.[1]

*Judgment reversed. Pope, P. J., and Smith, J., concur.*

DECIDED AUGUST 10, 1999

*Eugene C. Brooks IV, Russell M. Stookey*, for appellant.
*Decker & Hallman, William W. Briggs*, for appellee.

---

[1] Further, we note that "[P]rivately established rules are admissible as illustrative of negligence, but the violation of such a rule is not negligence in and of itself." (Citations and punctuation omitted.) *Luckie v. Piggly-Wiggly &c.*, 173 Ga. App. 177, 178 (325 SE2d 844) (1984); accord *Davis v. GBR Properties,* 233 Ga. App. 550, 551 (1) (504 SE2d 204) (1998); *DuPree v. Keller Indus.*, 199 Ga. App. 138, 142 (1) (404 SE2d 291) (1991).