A02A1168. MORESI et al. v. EVANS et al.
(572 SE2d 327)

MIKELL, Judge.

Lori and Lance Moresi filed suit against Carlton Douglas Evans, R.Ph., and Hapeville Drug Company, Inc. d/b/a Village Pharmacy ("Village Pharmacy") after Evans, a pharmacist, erroneously dispensed phenobarbital instead of phentermine hydrochloride to Mrs. Moresi. The action asserted claims of professional negligence, bad faith, punitive damages, and loss of consortium against Evans and alleged that Village Pharmacy was liable under the theory of respondeat superior. Mrs. Moresi claimed that after taking phenobarbital for four days, she began to experience side effects, including weakness, loss of consciousness, varicose veins, and swelling in her right leg. The trial court granted partial summary judgment to the plaintiffs on the issues of Evans' negligence and Village Pharmacy's potential respondeat superior liability. The court concluded that Evans breached a duty by mistakenly filling Mrs. Moresi's prescription with the wrong drug and, therefore, was negligent as a matter of law. However, the court held that the issues of proximate cause and damages were questions of fact for the jury.

On the defendants' motion, the trial court trifurcated the trial into three phases: (1) causation and compensatory damages; (2) liability for punitive damages; and (3) the amount of punitive damages. After the first phase of the trial, the jury returned a verdict in favor of the defendants, obviating the need for determining punitive damages. Judgment was entered on the verdict, and the plaintiffs filed a motion for a new trial. Following a hearing, the trial court denied the motion. This appeal followed.

Mr. and Mrs. Moresi argue that the trial court erred in trifurcating the trial, in limiting the testimony of their expert witness, in refusing to give their requested jury charge on the defendants' burden of proof, and in failing to clarify the applicable law in response to a jury question during deliberation. We affirm.

The record demonstrates that Mrs. Moresi began taking fenfluramine and phentermine hydrochloride ("Fen-Phen") by prescription in February 1997 to treat obesity. Approximately three months later, on May 28, 1997, Evans erroneously filled Mrs. Moresi's prescription for phentermine hydrochloride with 30 milligrams of phenobarbital. Phenobarbital is a widely used medication that is normally prescribed to control seizures. Over the next several days, Mrs. Moresi took four tablets of phenobarbital. She testified that she experienced a number of symptoms, including fatigue, lethargy, weakness, dizziness, headaches, emotional instability, and nightmares.

According to Mrs. Moresi, on May 31, after taking the fourth dose of phenobarbital, she felt increasingly weak, dizzy, and de-

pressed. She testified that she "blacked out" while taking a bath. Mrs. Moresi called a Kroger pharmacy and described the medication she had taken and her subsequent symptoms. Her conversation with the pharmacist led her to believe that she had ingested phenobarbital. Mrs. Moresi called her husband at work and told him that she believed she had been given the wrong medication.

Mr. Moresi testified that he arrived home between 30 and 40 minutes after his wife's call. He found his wife, wearing a towel, asleep on the couch. Their three young children, a two-year-old girl and twin eleven-month-old boys, were unattended. Mr. and Mrs. Moresi proceeded to the Georgia Baptist Urgent Care Center. After expressing her belief that she had been given phenobarbital, Mrs. Moresi was diagnosed with an adverse reaction to the drug. She was given intravenous fluids and activated charcoal. A blood test confirmed the presence of phenobarbital. However, the treating physician noted in her report that the level of phenobarbital in Mrs. Moresi's blood was "[b]arely detectible. Certainly not toxic." Mrs. Moresi was released that evening.

Mrs. Moresi testified that the next morning, June 1, she experienced additional symptoms including fluid retention, swelling in both legs, and throbbing pain in her right leg. She further testified that over the next several days, the veins in her right leg became swollen and "knotty" in appearance and that she had difficulty urinating. She also experienced nausea. On June 20, 1997, she returned to the Urgent Care Center, where she was diagnosed with pyelonephritis, an acute bacterial infection of the kidney resulting from poor emptying of the bladder, and phlebitis, an inflammation of the veins in the leg. Dr. Kimberly Gibson, Mrs. Moresi's treating physician at the Urgent Care Center, testified that she believed the adverse drug reaction was at least a contributing cause of both disorders. Similarly, Dr. Kenneth Barnwell, who provided ongoing treatment to Mrs. Moresi beginning on July 16, 1997, testified that he diagnosed the condition in her right leg as "recurrent thrombophlebitis in the varicose veins . . . with associated edema" and further testified that the condition was most likely related to exposure to phenobarbital.

The defense presented evidence that Mrs. Moresi had a history of leg swelling and varicose veins prior to ingesting phenobarbital. In fact, Mrs. Moresi admitted on cross-examination that she developed varicose veins during both of her pregnancies, beginning in 1994. Her obstetrician, Dr. Paul Browne, deposed that Mrs. Moresi's second pregnancy was complicated by "severe varicosities" and that once varicose veins develop, they can become a problem after the pregnancy is over. Further, Dr. Kellie Gray, a vascular surgeon who examined Mrs. Moresi, deposed that she knew of no correlation between phenobarbital and the occurrence of varicose veins.

Dr. Alexander Duncan, a blood coagulation specialist, testified that after reviewing Mrs. Moresi's medical records, he concluded that the problems in her right leg were not caused by an adverse reaction to phenobarbital. He further testified that the condition of Mrs. Moresi's right leg was probably related to the varicose veins she suffered during pregnancy.

The defense also presented evidence that Mrs. Moresi had a history of urinary tract infections and was treated for such infections on at least two occasions prior to ingesting phenobarbital. Additionally, Dr. Duncan testified that urinary tract infections are common in pregnant women and are caused by bacteria entering the body from the outside.

In response to Mrs. Moresi's claim that the phenobarbital caused her to feel lethargic and fatigued, the defense elicited her testimony on cross-examination that she often got up in the middle of the night to give the twins bottles and that she frequently was tired. Mr. Moresi admitted that the months leading up to May 1997 were "hectic times around [his] household," that he worked approximately 60 hours per week, that his wife was primarily responsible for caring for the children, and that she was often exhausted.

1. First, Mr. and Mrs. Moresi contend that the trial court erred in trifurcating the trial. Finding no abuse of discretion, we affirm.

"Trial courts are vested with wide discretion in the management of the business before them and this Court will not interfere absent clear and manifest abuse of discretion." *Cantrell v. Northeast Ga. Med. Center*, 235 Ga. App. 365, 368 (1) (b) (508 SE2d 716) (1998) (bifurcation of liability and damages issues in wrongful death and medical malpractice action was not error). See also *Hanie v. Barnett*, 213 Ga. App. 158, 160 (1) (444 SE2d 336) (1994) ("[a] trial court generally has broad authority in controlling the course of the trial"). As we noted in *Hanie*, supra, OCGA § 9-11-42 (b) "specifically authorizes the trial court to exercise its discretion in ordering severance of issues to avoid prejudice." Id. Significantly, OCGA § 51-12-5.1 (d) requires severance of the issues of liability for punitive damages and the amount of punitive damages.

In this case, because Evans' negligence had already been determined as a matter of law, certain evidence relating to the issue of negligence was made irrelevant to the determination of causation and compensatory damages. Further, the court properly recognized that evidence that would have been properly admitted to demonstrate that punitive damages were warranted might have improperly influenced the jury's determination of causation and compensatory damages. See *Hanie*, supra at 160 (1). For instance, the court ruled that evidence of prior disciplinary action against Evans would be admissible only in the punitive damages phase of the trial, as it had

no bearing on the issues of causation and compensatory damages. Additionally, the trial court ordered that the testimony of plaintiffs' expert witness, pharmacist James Bartling, regarding the applicable standard of care would only be admissible during the second phase of trial, as the question of whether Evans breached the standard of care was not at issue during the first phase.

The plaintiffs rely on *Webster v. Boyett*, 269 Ga. 191 (496 SE2d 459) (1998), for their argument that the court should not have trifurcated the trial. In that case, the Supreme Court recognized that OCGA § 51-12-5.1 (d) expressly requires bifurcation of the punitive damages issues. Id. at 192 (1). The Court further acknowledged that trial courts have the discretion to separate the issues of liability, whether punitive damages are warranted, and the amount of punitive damages in trifurcated proceedings. Id. at 196 (2). In response to this Court's opinion in that case, the Supreme Court went on to state that "we disagree that [trial courts] should employ a trifurcated procedure 'in most cases.' It is the rare case where, due to the complexity of the issues or evidence, the trial court should divide the trial into three separate phases." (Footnotes omitted.) Id. It is this language on which the plaintiffs rely in assigning error to the trial court's trifurcation of the case at bar. However, while the Supreme Court expressed a preference that trifurcation only be used in rare cases, it did not hold that trifurcation amounts to reversible error. Rather, the Court affirmed that the decision of whether to order severance of certain issues is within the sound discretion of the trial court. Id. at 197 (2).

In the case sub judice, we find no abuse of discretion by the trial court in concluding that this was a rare case warranting trifurcation. The procedural posture of the case, as well as the potentially prejudicial effect that evidence supporting the plaintiffs' claim for punitive damages might have had on the jury's determination of the issues of proximate cause and compensatory damages, justifies the court's decision. Further, it is clear from the record that the jury was adequately instructed on the procedural posture of the case. At the beginning of the trial, prior to opening statements, the court instructed the jury as follows:

> Ladies and gentlemen, some of the facts in this case or the allegations in this case have already been shared with you last week during the jury selection process. It is a pharmaceutical malpractice case, a negligence case. In any negligence case[,] there are generally four elements that must be proven by a preponderance of the evidence. One is a duty owed by the defendant to the plaintiff; number two would be a breach of that duty; three would be what is known as prox-

imate cause, or a causal relationship from the duty and the breach to any resulting damages; and the fourth element would be damages actually incurred by the plaintiff. *In this case, the first two issues have already been resolved; that is, the issues of a duty and a breach of the duty. Those issues have already been resolved in favor of the plaintiff. So the only issues left for your consideration at this phase of the trial would be the issues of proximate cause and damages.* I will charge you in detail on those issues after the closing arguments of the attorneys.

(Emphasis supplied.) At the close of the trial, the court again instructed the jury on the four elements of a negligence action. The court further explained the following to the jury:

In this case, it has already been resolved that the defendant owed the plaintiffs a duty and breached that duty. That is elements one and two. Therefore, the only elements of negligence for your consideration in this case are elements three and four — that is, whether there is a legally attributable causal connection between the defendant's conduct and the resulting injury, and whether there is some loss or damage flowing to the plaintiffs' legally protected interests as a result of the breach of the legal duty.

We conclude that the trial court acted within its discretion by trifurcating the proceedings and affirm on this ground.

2. Next, the plaintiffs contend that the trial court erred in limiting the testimony of their expert witness, John M. Holbrook, a pharmacologist. They argue that the court improperly excluded Dr. Holbrook's testimony regarding the proximate cause of Mrs. Moresi's medical problems. We disagree.

It is well settled that "[t]he question of whether a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion." (Citations omitted.) *Dayoub v. Yates-Astro Termite Pest Control Co.*, 239 Ga. App. 578, 579 (1) (521 SE2d 600) (1999). We recognized in *Dayoub,* supra, that a person who possesses special knowledge in a particular field is considered an expert and that an expert witness may express an opinion on a matter that is within his or her qualifications. Id. at 580. Further, we held in *Sinkfield v. Oh*, 229 Ga. App. 883 (495 SE2d 94) (1997), that a pharmacologist was competent to testify regarding the scientific effect of a particular drug and that the trial court in that case erred in excluding the testimony. Id. at 885-886 (1).

In the case sub judice, Mr. and Mrs. Moresi contend that the court abused its discretion by not allowing Dr. Holbrook to testify about the effect of a depressed autonomic immune system on a person's bladder. However, it is clear from the transcript that the trial court did permit Dr. Holbrook to testify extensively regarding the pharmacology and range of action of phenobarbital and fenfluramine,[1] the effects of those drugs on the central nervous system, the potential side effects of the drugs, and the concept of adverse drug reaction. Significantly, Dr. Holbrook testified that in his opinion, there was a causal relationship between the phenobarbital tablets Mrs. Moresi ingested and the symptoms she experienced on May 31, 1997. He further testified as to the pharmacological effects of phentermine, the drug she was prescribed, and his opinion on the possible interaction between the phenobarbital and fenfluramine that Mrs. Moresi took. Additionally, Dr. Holbrook testified that the combined effects of the drugs caused excessive central nervous system depression in Mrs. Moresi. The court did not permit Dr. Holbrook to testify about the effect of a depressed central nervous system on a person's bladder. The trial court explained its ruling as follows:

> I think I have ruled and that Dr. Holbrook was going to be permitted to testify as to the effects of the drugs, the direct effects of the drugs upon the body and its organs. And by him testifying that it depresses [the] autonomic nervous system, he has done so. . . . I think at this point you are asking him to become more of a medical doctor or a pathologist to say as a result of a depressed autonomic nervous system, how does this affect a bladder. . . . [H]e can testify as to direct causation of the drugs but we would not get into chain reaction testimony from this expert. You've got medical doctors that have already testified to their opinion as to the causation.

The plaintiffs rely on *Sinkfield,* supra, for their argument that the court erred in limiting Dr. Holbrook's testimony; however, such reliance is misplaced. In that case, we held that a pharmacologist was competent to testify to the scientific effect of a particular drug. Id. at 885 (1). In the case sub judice the trial court permitted Dr. Holbrook to testify extensively regarding the scientific effects of the drugs at issue. The court did not abuse its discretion in refusing to allow the pharmacologist to testify about the medical effect of a depressed central nervous system on Mrs. Moresi's other organs.

---

[1] Mrs. Moresi took fenfluramine, also known as Pondimin, in the evenings as part of her prescribed Fen-Phen regimen.

Compare *Goodman v. Lipman,* 197 Ga. App. 631, 634 (3) (399 SE2d 255) (1990) (trial court abused its discretion in totally excluding a pharmacologist's testimony about the properties of certain drugs).

We note that two physicians, Drs. Gibson and Barnwell, testified that Mrs. Moresi's medical problems, including her kidney infection and circulatory problems in her legs, were caused by the phenobarbital she ingested. Therefore, Dr. Holbrook's excluded testimony likely would have been cumulative of testimony already in evidence, and any alleged error in excluding it would have been harmless. See *Ratliff v. CSX Transp.,* 219 Ga. App. 53, 56 (2) (464 SE2d 1) (1995) (even if the court erred in excluding testimony, it was harmless error because the testimony would have been cumulative); *Hathcock v. State,* 214 Ga. App. 188, 192 (7) (447 SE2d 104) (1994) (any alleged error in excluding testimony was harmless given the cumulative nature of the excluded evidence). Compare *Jordan v. Santa Fe Engineering,* 198 Ga. App. 600, 602 (1) (402 SE2d 304) (1991) (excluded testimony of medical expert offered in rebuttal was not cumulative).

3. In their third enumerated error, the plaintiffs contend that the trial court erred in failing to instruct the jury that the defendants had the burden of proof as to the affirmative defense of alternate proximate cause. The trial court refused to give the plaintiffs' request to charge no. 43: "Ladies and gentlemen of the jury, I charge you that when theories of alternative causation are advanced by Defendant as an affirmative defense, the burden of proof is imposed upon Defendant as the party asserting and relying on such theories, and is not imposed upon Plaintiffs to disprove such theories." Instead, the court instructed the jury using the statutory language contained in OCGA § 24-4-1:

The burden of proof generally lies upon the party who is asserting or affirming a fact and to the existence of whose case or defense the proof of such fact is essential. If a negation or negative affirmation is essential to a party's case or defense, the proof of such negation or negative affirmation lies on the party so affirming it.

The court went on to state that "[t]he ultimate burden of proof on the issue of causation is upon the plaintiff." We find no error.

"Our review of the instructions actually given shows that the court substantially covered the same principle as that contained in the requested charge." *Harper v. Samples,* 164 Ga. App. 511, 514 (5) (298 SE2d 29) (1982). In order for a refusal to give a requested charge to be error, the principle contained in the requested charge must not have been otherwise contained in the court's general instruction to the jury. *Williams v. Worsley,* 235 Ga. App. 806, 807 (1) (510 SE2d 46)

(1998). "There is presently no requirement in this State that the court instruct in the exact language of a request, even though the request may be correct as an abstract principle of law which is directly applicable to a material issue." *Seagraves v. ABCO Mfg. Co.*, 121 Ga. App. 224, 226 (3) (173 SE2d 416) (1970). See also *Union Camp Corp. v. Daley*, 188 Ga. App. 756, 759 (5) (374 SE2d 329) (1988) (no error committed when the correct principle of law is charged, though not in the exact form requested).

Furthermore, the given charge was a correct statement of the law. It is well settled that in order to recover damages in a tort action, the plaintiff must demonstrate that his or her injuries were caused by the defendant's negligence. *Head v. Sears Roebuck & Co.*, 233 Ga. App. 344, 345 (503 SE2d 354) (1998). Accord *Jackson v. K-Mart Corp.*, 242 Ga. App. 274, 275 (529 SE2d 404) (2000). Pursuant to OCGA § 24-4-1, the court also instructed the jury that a party asserting a fact essential to that party's case *or defense* bears the burden of proof as to that fact. Therefore, the jury was adequately informed that the defendants bore the burden of proving any alternative theories of causation that they presented, while the plaintiffs were required to prove that Dr. Evans' negligence caused Mrs. Moresi's injuries in order to recover on their negligence claim. Accordingly, the trial court did not err in refusing to give the plaintiffs' requested charge.

4. Finally, the plaintiffs contend that the trial court failed to clarify the applicable law in response to a question from the jury during its deliberation. We disagree and affirm.

During deliberations, the jury sent the following handwritten question to the court: "Was there a compensation for breach of duty?" After discussing the question with counsel, the trial court sent a written response that instructed the jury as follows: "You decide compensation for breach of duty, if you find proximate cause. Plaintiffs must prove, by a preponderance of the evidence, that the breach of duty proximately caused the damages." Counsel for the plaintiffs objected only to the second sentence of the court's answer. On appeal, the plaintiffs contend that the court's response to the jury's question failed to clarify the law applicable to the issue of liability.

In *Glisson v. Glisson*, 268 Ga. 164 (486 SE2d 167) (1997), the Supreme Court acknowledged that "the need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial court." Id. at 166 (1). In that case, the Court held that the trial court's refusal to give any instructions to the jury in response to their questions constituted reversible error. Id. However, the case sub judice is distinguishable, in that here the trial court responded directly to the jury's question. We find no abuse of discretion in the court's response. See generally *Wall v. Hall*, 244 Ga. App. 61 (534

SE2d 828) (2000) (trial court did not abuse its discretion by directly answering the jury's question and repeating an applicable portion of the jury charge); *Trout v. Harrison*, 188 Ga. App. 246, 248 (4) (372 SE2d 651) (1988). Compare *Hartman v. Shallowford Community Hosp.*, 219 Ga. App. 498, 500-501 (2) (466 SE2d 33) (1995) (reversal warranted when the trial court's response to a jury question was likely to mislead the jury). The trial court directly addressed the jurors' question and reminded them of the instruction that the plaintiffs bore the burden of proving proximate cause.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 1, 2002 —

*David S. Bills*, for appellants.
*Hawkins & Parnell, William H. Major III, Peter R. York*, for appellees.