A06A0719. TENET HEALTHCARE CORPORATION et al.
v. GILBERT et al.
A06A0720. GILBERT et al. v. MOORE et al.
A06A0721. RICHARDSON v. GILBERT et al.
(627 SE2d 821)

BLACKBURN, Presiding Judge.

In this medical malpractice action, four defendants appeal (in Case No. A06A0719) and one defendant cross-appeals (in Case No. A06A0721) the trial court's denial of their respective motions to dismiss that challenged the sufficiency of plaintiff's OCGA § 9-11-9.1 expert affidavit attached to her complaint. The plaintiff cross-appeals (in Case No. A06A0720) the trial court's dismissal of three other defendants, whose dismissal was based on plaintiff's failure to serve those defendants with "greatest due diligence" after the statute of limitation had run. We hold that the expert affidavit was sufficient and therefore affirm in Case Nos. A06A0719 and A06A0721. In Case No. A06A0720, we hold that the trial court used the wrong legal standard to determine plaintiff's diligence in serving the dismissed defendants and therefore reverse and remand that case with direction.

The record shows the following undisputed facts. On November 4, 2003, Cherryl Gilbert filed a complaint individually and as administrator of her husband's estate, alleging that her husband died on November 4, 2001 as a result of negligent treatment received in Spalding Regional Hospital from several medical personnel, including three doctors (Richardson, Hull, and Moore) and three nurses (Lasky, Smith, and Brown). Defendants included the hospital, the three doctors and their employers (Main Street Medical Group and Spalding Surgery), and the three nurses and their employers (the

hospital or Tenet Healthcare Corporation and Tenet HealthSystem Spalding, Inc., which together allegedly operated the hospital).

Attached to Gilbert's complaint was an affidavit duly executed by Philip Longas, M.D., who testified that as a physician with six years experience, he was familiar with the standard of care exercised by physicians generally in circumstances similar to those of Gilbert's husband. Recounting the husband's medical history, Longas opined that the three doctors failed to meet that standard in that they failed to formulate and complete in a timely manner a plan of care with respect to the husband. Longas further opined that the three nurses also failed to meet the applicable standard of care in that they failed to carry out orders in a timely manner, to monitor the patient closely, to communicate important information to the other nurses and doctors, and to promptly report all changes in condition to the physicians. He concluded that these acts of negligence by the doctors and nurses proximately caused the husband's death.

The doctors, two of the nurses, and the respective employers each moved to dismiss the complaint on the ground that the Longas affidavit was insufficient in that just months prior to executing the affidavit, Longas's medical license had been revoked due to substance abuse problems. Tenet Healthcare and Tenet HealthSystem also claimed that the affidavit failed to specify an act of negligence against either of them. The trial court denied all of these motions to dismiss, finding that holding a license was not required (and that therefore the affidavit was sufficient) and finding that no specific act of negligence had to be identified with regard to the two Tenet defendants. The two Tenet defendants, the hospital, and nurses Smith and Brown appeal this order in Case No. A06A0719. Physician Richardson cross-appeals this order in Case No. A06A0721.

Physician Moore and two of the physician employers (Main Street Medical and Spalding Surgery) separately moved to dismiss the complaint on the ground that because Gilbert did not act diligently, they were served with process long after the complaint was filed and the statute of limitation had run. The trial court agreed, finding that Gilbert had failed to act with the "greatest due diligence" in perfecting service on these defendants. Gilbert cross-appeals this dismissal in Case No. A06A0720, arguing that the trial court employed an incorrect legal standard in determining diligence and that she was sufficiently diligent in any case.

### Case Nos. A06A0719 and A06A0721

1. The appellants in Case Nos. A06A0719 and A06A0721 first argue that the Longas affidavit was invalid as a matter of law since he attached the title "M.D." to his name, even though at the time he

executed the affidavit, he was no longer a licensed physician. They cite OCGA §§ 43-34-20; 43-34-26; and 43-34-46 for the proposition that including such initials after one's name constitutes the practice of medicine, which is impermissible when one does not hold a license to practice medicine.

Assuming that Longas's actions violated the law, we hold that such is irrelevant to determining the validity of the OCGA § 9-11-9.1 affidavit attached to Gilbert's complaint. OCGA § 9-11-9.1 (a) provides that in any action for damages alleging professional malpractice against certain professionals (such as medical doctors or nurses) or against a licensed health care facility, "the plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." Thus, this statute "requires a plaintiff to file with the complaint for professional negligence a legally valid affidavit." (Punctuation omitted.) *Goodin v. Gwinnett Health System.*[1] *Harvey v. Kidney Center of Central Ga.*[2] specifies the elements of a lawful affidavit:

> A signed statement of facts, purporting to be the statement of the signer, followed by the certificate of an officer, authorized to administer oaths that it was sworn to and subscribed before him, is a lawful affidavit. . . . To make a valid affidavit the affiant must swear to it, and the fact of his swearing must be certified by a proper officer. In order to make an affidavit there must be present the officer, the affiant, and the paper, and there must be something done which amounts to the administration of an oath.

(Citations, punctuation and emphasis omitted.)

Appellants do not contest that each of these elements is present in the Longas affidavit, and a review of the affidavit confirms that these elements are in fact present. Appellants' claim that Longas was practicing medicine without a license by executing the affidavit does not address the essential ingredients of a valid affidavit. Whether the execution of the affidavit constitutes a criminal violation may be used to challenge its credibility, but such is not relevant to the fact that the affidavit is valid testimony duly sworn to and executed before an authorized official, who has affixed the proper certification. The affidavit here is accordingly valid.

---

[1] *Goodin v. Gwinnett Health System*, 273 Ga. App. 461 (1) (615 SE2d 129) (2005).
[2] *Harvey v. Kidney Center of Central Ga.*, 213 Ga. App. 319, 320 (444 SE2d 590) (1994).

2. Appellants argue that the revocation of Longas's medical license rendered him incompetent to give the expert testimony set forth in this affidavit. Accordingly, they claim that Gilbert failed to submit an affidavit from "an expert competent to testify." OCGA § 9-11-9.1 (a). We review this issue de novo. *Porquez v. Washington.*[3]

Longas's affidavit sets forth, and appellants do not dispute, that armed with a medical degree from the James H. Quillen College of Medicine, Longas underwent an internship and residency program at East Tennessee State University and received his physician's license in 1996. For six years, he practiced medicine privately and in two hospitals in Tennessee and therefore was a fully licensed and practicing physician at the time the alleged malpractice occurred here in November 2001. He testified that he was familiar with the standard of care exercised by physicians generally in circumstances such as those present here.

Appellants submitted evidence showing that in July 2003, the Tennessee Board of Medical Examiners revoked Longas's license due to substance abuse problems. Longas executed the affidavit at issue on November 4, 2003. Gilbert has admitted that Longas was not licensed on the date he executed the affidavit and was still not licensed as of February 2004.

The question therefore is whether a physician expert submitting an OCGA § 9-11-9.1 affidavit regarding a medical standard of care must be licensed as a physician at the time he or she executes the affidavit in order to be competent to testify. We will first address this on the basis of the state of the statutory law at the time the Longas affidavit here was executed in November 2003. A subsequent analysis will address those changes to the statutory law that became effective in 2005.

Prior to the 2005 enactment of OCGA § 24-9-67.1, the case law is legion that generally no expert is required to hold a license to be competent to testify as to his areas of expertise. Only last year, *Yeomans & Assoc. Agency v. Bowen Tree Surgeons*[4] held that an insurance expert did not need to hold an insurance agent's license to render his opinion, explaining:

> An expert witness is anyone who, through training, education, skill, or experience, has peculiar knowledge that the average juror would not possess as to any question of science, skill, trade, or like questions. . . . *[T]he possession of a*

---

[3] *Porquez v. Washington,* 268 Ga. 649, 650 (492 SE2d 665) (1997).

[4] *Yeomans & Assoc. Agency v. Bowen Tree Surgeons,* 274 Ga. App. 738, 748-749 (5) (618 SE2d 673) (2005).

*license in Georgia does not go to qualification as an expert witness but may go to the weight and credibility that a jury gives to such expert's opinion.*

(Punctuation omitted; emphasis supplied.) *Dayoub v. Yates-Astro Termite Pest Control Co.,*[5] which rejected the need for a license for a pest control expert, explained further:

The requirements for qualification as an expert witness are minimal; generally, nothing more is required to qualify an expert than evidence that the person has been educated in a particular trade, science, or profession. Formal education or training in an area of expertise is not necessary, provided the witness possesses the qualifications of such area of expertise through skill and experience. It is the possession of special knowledge derived either from experience, study, or both in a field of expertise that makes one an "expert." Thus, an expert witness can express an opinion on a matter which comes within the person's qualifications.

Indeed, *Dayoub* held that a trial court abused its discretion in requiring a license for an expert witness, reasoning that "[s]uch license requirement is arbitrary and capricious and imposed a standard of qualification greater than that required by law." Id. Accordingly, Georgia appellate courts have also rejected the need for a license for experts testifying as experts in surveying (*Brooks v. Green*[6]), building inspections (*Williamson v. Harvey Smith, Inc.*[7]), and engineering (*Toole v. I. T. T. Grinnell Corp.*[8]).

With regard to the medical field, *Goodman v. Lipman*[9] specifically rejected any requirement that an expert who testifies regarding the standard of care for physicians be licensed or even be a physician at the time the alleged malpractice occurred. "Simply because a physician was not licenced to practice medicine at the time of an alleged incident of malpractice does not mean that the physician cannot become familiar with the applicable standard of care practiced in the medical community at the time of the alleged malpractice." Id. Moreover, "[t]he law in Georgia does not require that only medical doctors be permitted to give testimony regarding a medical issue, but

[5] *Dayoub v. Yates-Astro Termite Pest Control Co.,* 239 Ga. App. 578, 580 (1) (521 SE2d 600) (1999).

[6] *Brooks v. Green,* 277 Ga. 722, 723-724 (2) (594 SE2d 629) (2004).

[7] *Williamson v. Harvey Smith, Inc.,* 246 Ga. App. 745, 748 (3) (542 SE2d 151) (2000).

[8] *Toole v. I. T. T. Grinnell Corp.,* 156 Ga. App. 591, 592 (3) (275 SE2d 97) (1980).

[9] *Goodman v. Lipman,* 197 Ga. App. 631, 632 (1) (399 SE2d 255) (1990).

allows others with certain training and experience to testify on issues within the scope of their expertise." (Punctuation omitted.) Id. at 633 (3). Thus, a nurse may testify regarding a physician's negligence in failing to use a sterile needle when drawing blood (*Avret v. McCormick*[10]); an unlicensed osteopath physician may testify regarding the extent of plaintiff's injuries (*Macon R. & Light Co. v. Mason*[11]); and an x-ray technician not licensed to practice medicine may testify regarding injuries to bones (*Robertson v. Aetna Life Ins. Co.*[12]).

With regard to OCGA § 9-11-9.1 affidavits, *Lee v. Visiting Nurse &c.*[13] specifically rejected any requirement that a medical expert be licensed in order to give such affidavits; indeed, *Lee* reversed the trial court's dismissal of a medical malpractice action where the affidavit, which criticized the physical therapy techniques of a licensed physical therapist, was executed by someone not licensed as a physical therapist. The court reasoned that the affidavit revealed that the affiant (a physician) was well versed in the field and therefore could testify as to the physical therapist's actions. Id. Compare *Riggins v. Wyatt*[14] (rejecting affidavit of an expert who had no expertise as to the standard of care of a practicing surgeon in treating patients with the biomechanical device at issue). Accordingly, we similarly reject appellants' attempt here to require that Longas be a licensed physician to give his OCGA § 9-11-9.1 affidavit, where his affidavit sufficiently sets forth his expertise in the area at issue.

The second part of this analysis addresses appellants' claim that the 2005 enactment of OCGA § 24-9-67.1 requires that Longas be licensed at the time he executed the affidavit in 2003. See Ga. L. 2005, p. 1, § 7. Assuming arguendo that this new law was applicable to Longas's affidavit here, we hold that with respect to licensing, OCGA § 24-9-67.1 (c) (1) requires only that "at the time the act or omission is alleged to have occurred, such expert [w]as licensed by an appropriate regulatory agency to practice his or her profession in the state in which such expert was practicing or teaching in the profession at such time." Here, Longas was undisputedly licensed to practice medicine in Tennessee (where he was actively engaged in the fifth year of his medical practice) at the time the alleged negligence occurred in 2001. There is no dispute that Longas met the other portions of the 2005 enactment designed to upgrade the requirements for expert medical malpractice affidavits. See OCGA § 24-9-67.1 (c) (2). Thus, in a twist of irony, appellants' argument that the 2005

---

[10] *Avret v. McCormick*, 246 Ga. 401 (271 SE2d 832) (1980).

[11] *Macon R. & Light Co. v. Mason*, 123 Ga. 773, 777-779 (5) (51 SE 569) (1905).

[12] *Robertson v. Aetna Life Ins. Co.*, 37 Ga. App. 703 (2) (141 SE 504) (1928).

[13] *Lee v. Visiting Nurse &c.*, 223 Ga. App. 305, 309 (477 SE2d 445) (1996).

[14] *Riggins v. Wyatt*, 215 Ga. App. 854, 855 (452 SE2d 577) (1994).

enactment should apply here would only strengthen Longas's credentials for giving the affidavit.

3. The two nurses (and their employers) argue on appeal that nowhere in the Longas affidavit does he assert any expertise in the area of nursing care, particularly in the area in which he opines that the nurses here did not meet the standard of care. Had this argument been made below, and had Gilbert not then amended the affidavit timely, *Piedmont Hosp. v. Milton*[15] would have required the dismissal of the action against the nurses. In a medical malpractice action against nurses, a physician submitting an OCGA § 9-11-9.1 affidavit must show that the physician is an expert competent to testify in the field of nursing, *Piedmont Hosp.*, supra, which is wholly lacking in Longas's affidavit here.

Nevertheless, nowhere in the nurses' motion to dismiss below is there any hint that the basis for their complaint that Longas was incompetent to testify was because he had failed to set forth any expertise in the field of nursing. Rather, the motion focused exclusively on the revocation of his physician's license. OCGA § 9-11-9.1 (b)[16] outlines the significance of this omission, providing:

> If a plaintiff files an affidavit which is allegedly defective, and the defendant to whom it pertains alleges, *with specificity*, by motion to dismiss filed on or before the close of discovery, that said affidavit is defective, the plaintiff's complaint is subject to dismissal for failure to state a claim, except that the plaintiff may cure the alleged defect by amendment pursuant to Code Section 9-11-15 within 30 days of service of the motion alleging that the affidavit is defective.

(Emphasis supplied.) Thus, had the nurses *with specificity* asserted in their motion that the Longas affidavit failed to set forth his nursing expertise, then Gilbert would have had the opportunity to cure the defect by amendment within 30 days thereafter. Beyond their waiver of the issue by failing to raise it below (see *T. C. Property Mgmt. v. Tsai*[17]), the nurses cannot raise this argument for the first time on appeal where Gilbert has no opportunity to cure as allowed by statute. See *Tucker v. Thomas C. Talley, M.D., P.C.*[18] ("[a]s [defendants] did not object with specificity to the [expert] affidavit, they

---

[15] *Piedmont Hosp. v. Milton*, 189 Ga. App. 563, 564 (377 SE2d 198) (1988).

[16] Formerly, this subsection was OCGA § 9-11-9.1 (d) prior to the 2005 amendment found at Ga. L. 2005, p. 1, § 3.

[17] *T. C. Property Mgmt. v. Tsai*, 267 Ga. App. 740, 741 (600 SE2d 770) (2004).

[18] *Tucker v. Thomas C. Talley, M.D., P.C.*, 267 Ga. App. 820, 822 (1) (600 SE2d 778) (2004).

were not entitled to a dismissal for failure to state a claim on account of a failure to comply with OCGA § 9-11-9.1").

4. Tenet Healthcare and Tenet HealthSystem, some of whose employees allegedly committed the negligence, both moved to dismiss under OCGA § 9-11-9.1 on the ground that the Longas affidavit failed to specify an act of negligence against them as corporate entities. This argument fails on its face, however, for neither of these entities is a licensed health care facility, which is the only employer defendant to which the expert affidavit requirement applies. *Minnix v. Dept. of Transp.*[19] Moreover, the specification of negligent acts against their employees would suffice, as Gilbert was asserting liability under respondeat superior. See *Dozier v. Clayton County Hosp. Auth.*[20]

Accordingly, the trial court did not err in denying the motions to dismiss of Tenet Healthcare, Tenet HealthSystem, the hospital, nurse Brown, nurse Smith, and physician Richardson.

## Case No. A06A0720

5. Gilbert appeals the dismissal of three defendants (physician Moore, Main Street Medical, and Spalding Surgery), claiming that the trial court erred in finding that she did not exercise the "greatest due diligence" in serving these defendants after the statute of limitation had run. Because we hold that the trial court applied the wrong legal standard, we reverse and remand the case with direction.

The undisputed relevant facts are that Gilbert filed her action on the last day of the two-year statute of limitation. See OCGA § 9-3-71 (a). That same day, she sent each of the defendants via overnight delivery a copy of the complaint and summons as well as a request in statutory form that each defendant acknowledge service so as to avoid the costs of service. See OCGA § 9-11-4 (d). Within 30 days, all defendants acknowledged service other than physician Moore, Spalding Surgery, and Main Street Medical. When the minimal amount of time (thirty days plus three days for mailing) allowed by OCGA § 9-11-4 (d) (3) (F) passed with no service acknowledgment from these three defendants, Gilbert, within one day, forwarded the process papers and appropriate funds to the sheriff's office to have these defendants served as soon as possible. Spalding Surgery was served seven days after Gilbert sent the papers to the sheriff, Main Street Medical twenty-seven days, and physician Moore forty-four days. Gilbert submitted an affidavit from the sheriff's deputy who served

[19] *Minnix v. Dept. of Transp.*, 272 Ga. 566, 570-571 (3) (533 SE2d 75) (2000).
[20] *Dozier v. Clayton County Hosp. Auth.*, 206 Ga. App. 62, 64-65 (3) (424 SE2d 632) (1992).

the papers; she testified that based on her memory (she had disposed of her notes regarding these defendants), she had to make four to six trips to each defendant's office to effect service because the defendants did not keep regular office hours and because the offices were not always open when they said they would be open. She claimed that she used all proper diligence in accomplishing service as timely as practicable.

Based on these facts, the trial court granted the three defendants' motion to dismiss for lack of diligent service following the running of the statute of limitation. The court specifically found that "[p]laintiff failed to exercise the greatest due diligence in perfecting service upon [these defendants] after the statute of limitations expired."

The trial court used the wrong legal standard in determining that Gilbert failed to exercise sufficient due diligence. *Lee v. Kim*[21] recently reiterated the correct legal standard:

> The statute of limitation is tolled by the commencement of a civil action at law. OCGA § 9-11-4 (c) requires that service of a complaint shall be made within five days of the filing of the complaint. *If an action is filed within the period of limitation, but not served upon the defendant within five days or within the limitation period, plaintiff must establish that service was made in a reasonable and diligent manner in an attempt to insure that proper service is made as quickly as possible.* A reasonable rule must be that in such case the trial judge should look at all the facts involved and ascertain whether the plaintiff was in any way guilty of laches. If he were, of course he would be barred, but if he acted in a reasonably diligent manner then he would not be. The determination of whether the plaintiff was guilty of laches in failing to exercise due diligence in perfecting service after the running of the statute of limitation is a matter within the trial court's discretion and will not be disturbed on appeal absent abuse.

(Punctuation omitted; emphasis supplied.) See *Day v. Burnett*[22] ("[t]he correct test must be whether the plaintiff showed that he acted in a reasonable and diligent manner in attempting to insure that a proper service was made as quickly as possible") (punctuation omitted). See also *Carver v. Tift County Hosp. Auth.*[23]

---

[21] *Lee v. Kim*, 275 Ga. App. 891, 892 (622 SE2d 99) (2005).

[22] *Day v. Burnett*, 189 Ga. App. 905, 906 (377 SE2d 734) (1989).

[23] *Carver v. Tift County Hosp. Auth.*, 268 Ga. App. 153, 154-155 (601 SE2d 475) (2004).

The standard of "greatest possible diligence" or "greatest due diligence" employed by the trial court here is only triggered if the plaintiff is alerted to a service problem, *Lee v. Kim*, supra at 894, which recently this Court has held "should apply only in cases in which the statute of limitation has expired and the defendant has made an appearance in court raising a service defense." *Feinour v. Ricker Co.*[24] See *Ingraham v. Marr.*[25] See generally *Harris v. Johns*[26] (summarizing those cases so holding). Such, of course, did not occur here.

Nevertheless, even applying the broader standard of simply being alerted to a service problem, we hold that such did not occur here either. *Harris* summarizes the cases setting forth this broader standard as to include when the plaintiff learns that the address was not in the county where service had been attempted, when plaintiff learns that personal service was attempted unsuccessfully, when plaintiff becomes aware of a problem with the address given to the sheriff, and when plaintiff receives notice from the sheriff's department of a problem with service. Id. at 555. See *Feinour*, supra at 510-511, n. 6. Here, Gilbert simply waited the minimal time period to determine whether defendants intended to avoid the costs of service by acknowledging service voluntarily; there was no "problem" with attempted service, with wrong addresses, or with incorrect county designation. When after 30 days it became apparent that defendants were not going to acknowledge service, Gilbert quickly forwarded the process papers to the sheriff's office with appropriate payment. We have held that such circumstances do not trigger the higher "greatest possible diligence" standard but rather suffice as a matter of law to meet the lesser "reasonable due diligence" standard (and in fact have reversed as an abuse of discretion a trial court's findings to the contrary). See *Carver*, supra. Compare *Poteate v. Rally Mfg.*[27] (after thirty-day period to acknowledge service had passed, waiting an additional three weeks before forwarding the process papers onto the sheriff showed lack of reasonable diligence).

Where the trial court has applied the wrong legal standard in determining diligence in service, we reverse and ordinarily remand the case to the trial court "as the issue of diligence is generally a matter committed to the discretion of the trial court." (Punctuation omitted.) *Ingraham*, supra at 447 (2). See generally *Braynon v.*

---

[24] *Feinour v. Ricker Co.*, 269 Ga. App. 508, 510 (604 SE2d 588) (2004).

[25] *Ingraham v. Marr*, 246 Ga. App. 445, 447 (2) (540 SE2d 652) (2000).

[26] *Harris v. Johns*, 274 Ga. App. 553, 554-555 (618 SE2d 1) (2005).

[27] *Poteate v. Rally Mfg.*, 260 Ga. App. 34, 36-37 (4) (579 SE2d 44) (2003).

*Hilbert.*[28] Here, the trial court must consider whether in light of all the circumstances, the service on each defendant within seven, twenty-seven, and forty-four days respectively after forwarding the process papers to the sheriff's office constituted a showing by plaintiff that service on each took place in a reasonable and diligent manner. See *Lee v. Kim,* supra at 892-894 and cases cited therein. See also *Corley v. Gilley.*[29] At this stage, we decline to substitute our judgment for that of the trial court.

6. Gilbert also enumerates as error the trial court's purported grant of summary judgment to physician Hull and purported denial of Gilbert's motion to add a new physician defendant (Aristide) as a party. However, neither of these orders (which purportedly were entered after the June 10, 2004 order that is the subject of the main appeal) is found in the appellate record transmitted to this Court, nor has Gilbert moved to supplement the record with these orders (even though Gilbert represented in her appellate brief that she would do so). Where the appellant fails to include in the appellate record the orders being challenged, there is nothing for us to review. See *In re Matter of Fee Petition of Whatley;*[30] *Tyree v. Jackson.*[31]

*Judgments affirmed in Case Nos. A06A0719 and A06A0721. Judgment reversed and case remanded with direction in Case No. A06A0720. Mikell and Adams, JJ., concur.*

DECIDED FEBRUARY 15, 2006 —
RECONSIDERATIONS DENIED MARCH 6, 2006 — ▮▮▮▮▮

*Weinberg, Wheeler, Hudgins, Gunn & Dial, Julie H. Perry, Ashley P. Nichols,* for Tenet Healthcare Corporation et al.

*Joseph H. King, Jr.,* for Gilbert et al.

*Willis, McKenzie, DeGennaro & Alford, Charles J. Willis, Matthew C. Alford,* for Moore et al.

*Hall, Booth, Smith & Slover, Michael A. Pannier, Jason P. King,* for Richardson.

---

[28] *Braynon v. Hilbert,* 275 Ga. App. 511, 513 (621 SE2d 529) (2005).

[29] *Corley v. Gilley,* 205 Ga. App. 660, 661 (423 SE2d 55) (1992).

[30] *In re Matter of Fee Petition of Whatley,* 256 Ga. 289, 290 (1) (347 SE2d 602) (1986).

[31] *Tyree v. Jackson,* 226 Ga. 690, 691 (2) (177 SE2d 160) (1970).