A05A0637. YEOMANS & ASSOCIATES AGENCY, INC.
v. BOWEN TREE SURGEONS, INC. et al.
A05A0638. CANAL INDEMNITY COMPANY v. BOWEN TREE
SURGEONS, INC. et al.
(618 SE2d 673)

ELLINGTON, Judge.

These appeals arise from a judgment on a jury verdict in favor of George Bowen and his business, Bowen Tree Surgeons, Inc., in their suit against their insurance agency, Yeomans & Associates Agency, Inc. ("Yeomans"), and their insurer, Canal Indemnity Company ("Canal"). In Case No. A05A0637, Yeomans contends that the trial court abused its discretion in admitting certain evidence and erred in instructing the jury. In Case No. A05A0638, Canal challenges the grant of partial summary judgment to Mr. Bowen and Bowen Tree Surgeons, contends it was entitled to a directed verdict, and claims the court abused its discretion in excluding evidence. Finding no error, we affirm.

The record on appeal shows the following relevant facts. On December 18, 2000, Michael S. Black was driving his car when he collided with a car occupied by Joel and Brenda Cowart. Both of the Cowarts were injured as a result of the collision. The Cowarts filed suit in Burke County (hereinafter, "the Cowart suit") against Black and Black's employer, Bowen Tree Surgeons. The suit alleged that Black's negligence caused the collision, that Black was acting within the scope of his employment at the time of the collision, and, therefore, Bowen Tree Surgeons was liable for Black's negligence under the doctrine of respondeat superior.

At the time of the collision, Mr. Bowen had several personal and business insurance policies through Yeomans, an independent insurance agency which sells different types of insurance from several insurance companies. Bowen Tree Surgeons' business policies included a motor vehicle policy issued by Auto-Owners that covered its fleet of business vehicles, and a commercial general liability coverage policy issued by Canal (hereinafter, the "Canal policy"). A Yeomans insurance agent, Lisa Bertoch, regularly assisted Mr. Bowen with the

policies, handling claims and collecting premium payments on behalf of the insurers. According to Bertoch, her duties as an insurance agent included acting as an "outlet" between her clients and the insurers, and she recognized that an insurer might be bound by the acts of an insurance agent. Whenever Mr. Bowen submitted a claim under the Canal policy, Bertoch sent it to a brokerage firm, the Strickland General Agency, which issued the policy on behalf of Canal. Strickland would, in turn, send the claim to Canal for processing. Bertoch testified that this procedure was the "normal course of action" between the parties and that none of the parties ever objected to the procedure. As part of its employee training, Yeomans instructed its agents that, if they were not sure which insurer would cover a claim, or if there was any doubt as to whether an insurer would cover a claim, the agent should file it with every insurer that might provide coverage. Because Bertoch handled Mr. Bowen's insurance policies, Mr. Bowen never had any direct contact with Strickland or his insurers about changing or renewing policies, making premium payments, or submitting claims, although a Canal claim representative came to Bowen Tree Surgeons' office a few times to investigate claims that had been submitted.

When Mr. Bowen received notice of the Cowart suit, he delivered the notice to Bertoch, telling her his business had been sued. Mr. Bowen told Bertoch that, at the time of the Cowart collision, Black was off duty and driving his own car. Bertoch told Mr. Bowen that she would take care of the lawsuit and forward it to the insurer. Bertoch sent the notice of the Cowart suit to Auto-Owners, but did not submit the notice to Canal because she believed Canal would not provide coverage for the collision. In making that decision, Bertoch relied upon her general training and experience as an insurance agent. She did not have a copy of the Canal policy, and there is no evidence that she made any further inquiries or otherwise investigated the nature and extent of Bowen Tree Surgeons' coverage under the Canal policy.

A few days after receiving notice of the Cowart suit, Auto-Owners sent a letter to Yeomans and Mr. Bowen informing them that there was no coverage under its business vehicle policy and that it would not defend Bowen Tree Surgeons in the suit. The letter stated that Mr. Bowen should contact Black's insurance carrier to see if it would file an answer on behalf of Bowen Tree Surgeons. Auto-Owners also told Mr. Bowen that, if Black's carrier refused to file an answer for Bowen Tree Surgeons, he would need to hire an attorney to file an answer in the Cowart suit.

Mr. Bowen did not hire his own lawyer, however, because he had the general liability policy through Canal for lawsuits against his business and thought that Bertoch had forwarded the notice to Canal. Based upon Mr. Bowen's previous dealings with Bertoch, he knew she

had always taken care of his claims, he trusted her, and he had never had a problem with his claims. Therefore, because he thought Canal would be defending him, he did not take any action with the Cowart suit. No one from Yeomans told Mr. Bowen that the agency had not sent the notice of the Cowart suit to Canal or that Canal would not provide a defense or insurance coverage for Bowen Tree Surgeons.

Canal failed to file an answer on behalf of Bowen Tree Surgeons in the Cowart suit. On April 19, 2002, the Burke County court issued a default judgment in the Cowart suit against Black and Bowen Tree Surgeons, jointly and severally, in the amount of $1,250,000. After Mr. Bowen learned of the default judgment, Bowen Tree Surgeons filed a motion to set aside the judgment. Mr. Bowen, on behalf of his business, and the Cowarts subsequently agreed on a settlement which, among other things, required it to dismiss its motion to set aside the default judgment. According to the settlement agreement, Mr. Bowen and Bowen Tree Surgeons lacked the funds to satisfy the default judgment and would have been compelled to file bankruptcy if the Cowarts sought to collect on it.

Following the default judgment, but before entering into the settlement agreement with the Cowarts, Mr. Bowen and Bowen Tree Surgeons (hereinafter, "the plaintiffs") sued Canal and Yeomans[1] for the amount of the award on the default judgment, plus attorney fees and bad faith penalties. According to the complaint, Canal received notice of the Cowart suit through its agent, Yeomans, and Canal breached its obligation to the plaintiffs under the Canal policy to provide coverage and a defense in the Cowart suit. The complaint also alleged that both Canal and Yeomans failed to investigate the facts and circumstances surrounding the Cowart suit and that a reasonable investigation, combined with the information Mr. Bowen had provided to Bertoch, would have demonstrated the potential for coverage under the Canal policy and Canal's obligation to defend Bowen Tree Surgeons.

The plaintiffs moved for summary judgment, and Canal filed a counter motion for summary judgment. The trial court denied the plaintiffs' motion and granted Canal's motion, concluding that there was no evidence that Yeomans was an agent of Canal and, therefore, no evidence that Canal received notice of the Cowart suit. The plaintiffs appealed the order to this Court, and we reversed the grant of summary judgment to Canal, concluding a jury issue existed as to Canal's "relationship with Yeomans and, specifically, the extent of Yeomans' ability to accept notice of claims on Canal's behalf as a

---

[1] The complaint also named Walt Yeomans, individually, and Lisa Bertoch, the Yeomans insurance agent, as defendants. Both were dismissed from the suit before trial.

fiduciary and as a dual agent." *Bowen Tree Surgeons v. Canal Indem. Co.*, 264 Ga. App. 520, 523 (591 SE2d 415) (2003).

On remand, the plaintiffs moved for partial summary judgment on the issues of whether Canal was obligated to provide Bowen Tree Surgeons a defense and insurance coverage in the Cowart suit. The trial court granted the plaintiffs' motion, concluding that the Cowart complaint, combined with Mr. Bowen's statements to Bertoch when he gave her the lawsuit, set forth a claim for an "occurrence" as defined in the Canal policy and that no policy exclusions applied to the claim. Therefore, the trial court ruled that the Canal policy provided coverage for the claim and that Canal had had a duty to defend Bowen Tree Surgeons in the Cowart suit.

The case proceeded to a jury trial, which resulted in a special verdict finding that Canal had received constructive notice of the Cowart suit. The jury also awarded the plaintiffs $1,550,000 against Yeomans. Following the court's entry of judgment on the verdict,[2] Canal and Yeomans appeal.

### Case No. A05A0638

In this appeal, Canal challenges two rulings of the trial court. Because resolution of the issues raised in this appeal have an impact on certain enumerated errors in the companion case, we will address this appeal first.

1. Canal claims the trial court erred when it granted partial summary judgment to the plaintiffs based upon its conclusions that the Canal policy provided coverage for Bowen Tree Surgeons in the Cowart suit and that Canal had a duty to defend Bowen Tree Surgeons. We disagree.

(a) "An insurance policy is simply a contract, the provisions of which should be construed as any other type of contract. The construction of an unambiguous contract is a question of law for the court." (Citations and punctuation omitted.) *Hunnicutt v. Southern Farm Bureau Life Ins. Co.*, 256 Ga. 611, 612 (4) (351 SE2d 638) (1987). "Whether an insurer is obligated to defend an action against its insured is determined by the contract." (Citations and punctuation omitted.) *Penn-America Ins. Co. v. Disabled American Veterans*, 224 Ga. App. 557, 558 (481 SE2d 850) (1997). As we have previously held,

---

[2] Based upon the special verdict, the court issued a judgment holding Canal and Yeomans jointly and severably liable for the $1,550,000 in damages. The court also limited Canal's exposure under the judgment to $1,000,000, based upon an earlier agreement between Canal and the plaintiffs that, if the jury found that Canal had received constructive notice, Canal's liability to the plaintiffs would be limited to $1,000,000.

"the issue is not whether the insured is *actually liable* to the plaintiffs; the issue is whether a claim has been asserted which falls within the policy coverage and which the insurer has a duty to defend." (Citations and punctuation omitted; emphasis in original.) Id. Further, the Supreme Court of Georgia has ruled that an insurer has a "duty to defend its insured against all claims covered under a policy, even those that are groundless, false, or fraudulent." (Footnote omitted.) *Southern Guaranty Ins. Co. v. Dowse*, 278 Ga. 674, 676 (1) (605 SE2d 27) (2004). This is because "an insurer's duty to pay and its duty to defend are separate and independent obligations." (Citations and punctuation omitted.) *Penn-America Ins. Co. v. Disabled American Veterans*, 224 Ga. App. at 559.

In this case, the Canal policy provided general liability coverage to Bowen Tree Surgeons and included an obligation for Canal to defend the business against any suit seeking damages for bodily injuries "to which this insurance applies." The policy applied to any "bodily injury" that was caused by an "occurrence," subject to certain exclusions. The policy defined an "occurrence" as an "accident." Specifically, the policy excluded coverage for a bodily injury that arose out of the use of an automobile that was owned or operated by any insured. The policy defined an "insured" as including an employee of the named insured if the employee was acting within the scope of his employment at the time of the occurrence which caused the injury.

It is undisputed that Bowen Tree Surgeons' employee, Black, was driving his own car on personal business outside the scope of his employment at the time of the collision with the Cowarts. Therefore, under the unambiguous language of the Canal policy, Black was not an "insured" under the policy, and the exclusion for bodily injuries arising from the use of an automobile by an insured did not apply. The record also shows that no other policy exclusion applied in this case. Further, Bowen Tree Surgeons was a named insured under the Canal policy and the Cowarts sued the business based upon its alleged responsibility for the occurrence. Accordingly, the trial court properly concluded that the Cowarts' injuries arose from an "occurrence" under the Canal policy.

As noted above, "an insurer's duty to pay and its duty to defend are separate and independent obligations." (Citations and punctuation omitted.) *Penn-America Ins. Co. v. Disabled American Veterans*, 224 Ga. App. at 559. We emphasize that the issue of whether Bowen Tree Surgeons was *actually* liable to the Cowarts for Black's negligence under respondeat superior is irrelevant to the question of whether Canal was obligated to defend Bowen Tree Surgeons in the Cowart suit under the plain language of the policy. Clearly, if Canal had defended Bowen Tree Surgeons, Canal would have had the

opportunity to show that the business was not liable under respondeat superior because Black was acting outside the scope of his employment at the time of the collision. The fact that Bowen Tree Surgeons may have ultimately prevailed in the Cowart suit, however, did not relieve Canal of its obligation to defend the business. As we have previously held, under these circumstances, "it was [Canal's] duty to seek that favorable decision on its insureds' behalf." Id. at 558-559. Accordingly, Judge Andrews' conclusion in his dissent that Canal had no duty to defend Bowen Tree Surgeons because the Cowarts would not be able to prevail on their claim against the business is both misguided and contrary to precedent. Moreover, Judge Andrews' dissent has failed to show why, under the undisputed facts and unambiguous language of the policy, the Cowart collision is not an "occurrence" entitled to a defense.

Judge Blackburn's dissent is equally misguided. He contends that the Canal policy did not cover the Cowart collision because he believes that such coverage was contrary to the intention of both Canal and Bowen Tree Surgeons. It is well established, however, that "[i]f the language of a contract is clear and unambiguous, the terms of the agreement are controlling and an appellate court should look no further to determine the intention of the parties." (Citation omitted.) *Terry v. State Farm Fire &c. Ins. Co.*, 269 Ga. 777, 778-779 (2) (504 SE2d 194) (1998). In this case, none of the parties contend that the contract language is ambiguous; to the contrary, they vigorously argue that the contract terms are clear and unambiguous, and we agree. Accordingly, this Court should not reverse the trial court's finding that the Cowart collision was an "occurrence" under the plain and unambiguous terms of the policy based upon our belief about what the parties may have intended.

Even if the contract terms are ambiguous, however, such ambiguities must be strictly construed against the insurer as the drafter of the document, especially any exclusions from coverage sought to be invoked by the insurer. *Guaranty Nat. Ins. Co. v. Brock*, 222 Ga. App. 294, 296-297 (2) (474 SE2d 46) (1996). Further, to the extent that this Court can even consider what the parties may have intended, Judge Blackburn's conclusion that Mr. Bowen intended to purchase "seamless, non-duplicative coverage" when he purchased two business insurance policies from Yeomans is mere speculation, without any evidentiary support in the record. In fact, this argument was not raised by any party in the trial court, there is no indication that the trial court even considered it when ruling on the coverage issue, and no party even suggested it on appeal. Instead, in reaching this conclusion, Judge Blackburn relies upon his opinion in *Strickland v.*

*Auto-Owners Ins. Co.,*[3] and upon *Grain Dealers Mut. Ins. Co. v. Pat's Rentals.*[4] His reliance on *Strickland* is misplaced, however, because the insured in that case was a motor common carrier, and there was evidence that it was "common industry practice for motor common carriers . . . to obtain two separate policies of insurance to provide seamless coverage for different risks." *Strickland v. Auto-Owners Ins. Co.,* 273 Ga. App. at 663. In contrast, there was no evidence in this case of any "common industry practice" regarding liability insurance for tree surgeons. Further, this case is clearly distinguishable from *Strickland* and *Grain Dealers Mut. Ins. Co.* on a critical fact: in both cases, the collisions involved vehicles owned by the insureds and, therefore, covered under the insureds' business vehicle insurance policies. Neither insured intended or desired for its general commercial liability policy to provide additional, overlapping coverage. Here, however, it is undisputed that Black was not driving a vehicle owned by Bowen Tree Surgeons at the time of the collision and, therefore, there was no coverage under the Auto-Owners business vehicle policy. As such, the concern about unintended overlapping coverage is simply not present here.

Ironically, this case is instead clearly analogous to Judge Blackburn's opinion in *Guaranty Nat. Ins. Co. v. Brock,*[5] in which this Court found that a school administrator's professional liability insurance covered a negligent hiring claim that arose from a school bus collision that was specifically excluded from the policy's coverage. 222 Ga. App. at 296-297 (2). In later explaining this apparent inconsistency, this Court stated that, if the exclusion had applied in *Brock,* "the administrator would have had no professional coverage at all . . . which would contravene the very purpose of the professional liability insurance policy." *Grain Dealers Mut. Ins. Co. v. Pat's Rentals,* 228 Ga. App. at 855 (a). Similarly, in this case, if this Court construed the unambiguous terms of Bowen Tree Surgeons' general liability insurance policy in favor of Canal to find that the Cowart collision was not covered, not only would such construction be improper, but Bowen Tree Surgeons would have no coverage under any insurance policy for the Cowarts' claim that the business was liable for its employee's negligence. This would clearly contravene Mr. Bowen's purpose in obtaining a general commercial liability policy for his business.

(b) Canal also argues that it had no duty to defend Bowen Tree Surgeons against the Cowarts' claims because the Cowart complaint

---

[3] 273 Ga. App. 662 (615 SE2d 808) (2005).

[4] 228 Ga. App. 854 (492 SE2d 702) (1997), rev'd on other grounds, 269 Ga. 691 (505 SE2d 729) (1998).

[5] 222 Ga. App. 294 (474 SE2d 46) (1996).

alleged that Black *was* acting in the scope of his employment at the time of the collision and, therefore, the collision fell under the policy exclusion for the use of an automobile by an insured. It is undisputed, however, that when Mr. Bowen notified Bertoch of the Cowart suit, he specifically told her that Black was off duty and driving his own car at the time of the collision. When a complaint on its face shows that there is no coverage, but the insured notifies the insurer or the insurer's agent of additional facts that would place the claim within the policy coverage, the insurer must consider such facts when deciding whether it has an obligation to defend the claim. *Colonial Oil Indus. v. Underwriters &c.*, 268 Ga. 561, 562 (2) (491 SE2d 337) (1997). This requires the insurer to conduct a reasonable investigation into the insured's contentions to determine the insured's rights under the insurance contract. Id. Accordingly, Canal cannot rely solely upon the language of the complaint in arguing it had no duty to defend Bowen Tree Surgeons.

We find that, under the circumstances presented, the trial court properly concluded that the Cowart collision was an "occurrence" under the Canal policy and, therefore, that Canal had a duty to defend Bowen Tree Surgeons in the Cowart suit. *Penn-America Ins. Co. v. Disabled American Veterans*, 224 Ga. App. at 559.

2. Canal claims that it was entitled to a directed verdict on the issue of whether there was an agency relationship between Canal and Yeomans. This Court reviews the denial of a motion for a directed verdict under the "any evidence" test. *Pulte Home Corp. v. Woodland Nursery & Landscapes*, 230 Ga. App. 455, 456 (2) (496 SE2d 546) (1998). "The question before this [C]ourt is not whether the verdict and the judgment of the trial court were merely authorized, but is whether a contrary judgment was demanded." Id. After viewing the evidence in the light most favorable to the jury's verdict, if this Court finds there is any evidence to support the verdict, it will affirm the denial of a directed verdict. Id.

As noted above, this Court previously reversed the trial court's grant of summary judgment to Canal on the issue of whether Yeomans acted as an agent of Canal such that Yeomans' notice of the Cowart suit could be attributed to Canal as its principal. *Bowen Tree Surgeons v. Canal Indem. Co.*, 264 Ga. App. at 523. In that opinion, this Court relied upon *Byrne v. Reardon*, 196 Ga. App. 735, 736 (4) (397 SE2d 22) (1990), which held that, when an insurance agency collects premium payments from the insured and submits notices of claims to the insurer, the insurance agency could be considered a dual agent for the insured and for the insurer. *Bowen Tree Surgeons v. Canal Indem. Co.*, 264 Ga. App. at 522. After noting that there was evidence that "Yeomans customarily accepted premiums and notices of claims on Canal's behalf," and that there was "no indication . . .

Canal ever voiced any objection to this [business] custom," this Court concluded that a jury question existed on whether there was an agency relationship between Canal and Yeomans and the extent of Yeomans' ability to accept notice of claims on Canal's behalf as a fiduciary and a dual agent. Id. at 523.

Applying the same analysis to the instant appeal, we find there was evidence presented at trial from which the jury could find that an agency relationship existed between Yeomans and Canal and that Canal received constructive notice of the Cowart suit. *Bowen Tree Surgeons v. Canal Indem. Co.*, 264 Ga. App. at 523; see also *Intl. Indem. Co. v. Odom*, 174 Ga. App. 6, 7 (2) (329 SE2d 307) (1985) (insurer allowed an insurance agent to collect all of the premium payments and serve as its only contact with the insured; therefore, the agent had the apparent authority to receive notice of a claim on behalf of the insurer, and the insurer was estopped from claiming otherwise). More importantly, contrary to Judge Andrews' conclusion in his dissent, the evidence presented *did not demand a finding as a matter of law* that there was *no* agency relationship between Canal and Yeomans. Therefore, Canal was not entitled to a directed verdict on this issue. *Pulte Home Corp. v. Woodland Nursery & Landscapes*, 230 Ga. App. at 456 (2).

3. Canal contends the trial court erred in excluding evidence of the settlement agreement between Bowen Tree Surgeons and the Cowarts in the Cowart suit. Prior to trial in the instant case, the plaintiffs filed a motion in limine to exclude evidence of the settlement agreement at trial. The trial court granted the motion, finding that such evidence was irrelevant and would be prejudicial to the plaintiffs. The court specifically prohibited Yeomans and Canal from referring to the settlement or from collaterally attacking Mr. Bowen's handling of Bowen Tree Surgeons' defense in the Cowart suit.

On appeal, Canal argues that the settlement agreement was relevant to show the jury that Bowen Tree Surgeons violated the terms of the Canal policy by settling with the Cowarts without getting Canal's consent.[6] But Canal has consistently denied that it was ever obligated to defend Bowen Tree Surgeons in the Cowart suit, and it continues to deny its responsibility in this appeal. See Division 1, supra. Had Canal, in fact, defended Bowen Tree Surgeons, it could have directed the course of that defense and, perhaps, helped the business avoid a default judgment or a judgment on the merits. Following Canal's failure to defend Bowen Tree Surgeons, however, the business suffered a default judgment for a substantial amount of

---

[6] The Canal policy included a provision which prohibited an insured from assuming any obligation or incurring any expense related to a claim under the policy without Canal's consent.

money — enough to force the business into bankruptcy. At that point, Mr. Bowen took steps that he believed to be necessary to protect his business interests.

Under these circumstances, Canal is estopped from arguing that the plaintiffs violated the insurance policy by settling a claim without Canal's consent, when it was Canal who breached the policy and left Bowen Tree Surgeons unprotected in the Cowart suit. As the Supreme Court of Georgia has held, "an insurer that denies coverage and refuses to defend an action against its insured, when it could have done so with a reservation of its rights as to coverage, waives the provisions of the policy against a settlement by the insured." (Punctuation and footnote omitted.) *Southern Guaranty Ins. Co. v. Dowse*, 278 Ga. at 676 (1).

Accordingly, we find the trial court did not abuse its discretion in excluding evidence of the settlement agreement. See *Stovall v. DaimlerChrysler Motors Corp.*, 270 Ga. App. 791 (608 SE2d 245) (2004) (the admission or exclusion of evidence is a matter within the discretion of the trial court and will not be disturbed absent abuse of that discretion).

## Case No. A05A0637

In its appeal, Yeomans claims the trial court abused its discretion in ruling on the motions in limine and in the admission of certain evidence. It also challenges a jury instruction.

4. Yeomans contends the trial court erred in allowing into evidence the summary judgment order which found, as a matter of law, that the Canal policy provided coverage for Bowen Tree Surgeons in the Cowart suit and that Canal had a duty to defend the company. See Division 1, supra. Yeomans complains that the plaintiffs should not have been able to use the order to suggest to the jury that Bertoch was wrong about whether the Canal policy covered the Cowart collision.

During trial, Bertoch and Mr. Yeomans consistently testified that the Canal policy did not cover the Cowart collision and, therefore, they had no duty to forward the Cowart suit to Canal. Yet, when the plaintiffs offered the summary judgment order into evidence, Yeomans objected on the basis of relevance, arguing that the issue of the Canal policy's coverage was not before the jury. Later, after Bertoch and Mr. Yeomans were questioned about the summary judgment order by *both* the plaintiffs and Yeomans,[7] Yeomans again objected,

---

[7] According to Yeomans' brief, Bowen improperly cross-examined Bertoch and Mr. Yeomans about the summary judgment order. Yeomans, however, failed to cite to the pages of the trial transcript where this questioning took place. Further, the transcript in the record on appeal is missing pages 176-200, during which plaintiffs' counsel cross-examined Bertoch. To

arguing that a court's conclusion that the Cowart collision was covered under the Canal policy was not relevant to whether Yeomans breached its duty to Bowen Tree Surgeons three years before the court issued its decision.

Bertoch and Mr. Yeomans, however, did not testify that they simply thought there was no coverage *at the time Mr. Bowen brought the Cowart suit to Bertoch.* Instead, they testified that Bowen Tree Surgeons *was not and never had been covered* for the Cowart collision under the Canal policy. This testimony was clearly elicited to contradict the trial court's ruling that the Cowart collision was covered under the Canal policy and to support Yeomans' argument that Bertoch had correctly determined that there was no coverage, so that they had no duty to forward the notice of the Cowart suit to Canal. Under these circumstances, we find the trial court's ruling was relevant to the issues of whether there was coverage under the Canal policy, whether Yeomans owed a duty to Bowen Tree Surgeons to forward the notice of the Cowart suit to Canal, whether Yeomans breached its duty by failing to forward the suit to Canal, and whether that breach caused the plaintiffs' damages, specifically, the default judgment. Accordingly, we find the trial court did not abuse its discretion in admitting the order. See *Stovall v. DaimlerChrysler Motors Corp.*, 270 Ga. App. at 791 (decisions to admit evidence are reviewed under an abuse of discretion standard).

5. Yeomans contends the trial court erred in failing to exclude the testimony of the plaintiffs' expert witness. At trial, Yeomans argued that, because the witness had never been an independent insurance agent or licensed as an agent in Georgia, the witness was not qualified to give his opinion about the duties owed to the plaintiffs by Yeomans. On appeal, Yeomans also challenges the weight and credibility of the expert's testimony, arguing that the expert's testimony conflicted with that of Yeomans' witnesses.

> An expert witness is anyone who, through training, education, skill, or experience, has peculiar knowledge that the average juror would not possess as to any question of science, skill, trade, or like questions[.] [T]he expert witness may render an expert opinion within the witness' area of expertise after the qualifications have been proven to the trial court. It is for the trial court to determine, as a matter of law after hearing evidence, whether a witness is competent by way of qualifications to render an opinion within [his

---

the extent Yeomans alleges that prejudicial error occurred during this cross-examination, it has failed to demonstrate it by the record. See Court of Appeals Rule 25 (c) (2), (3).

or her] area of expertise. . . . [Further, t]he possession of a license in Georgia does not go to qualification as an expert witness but may go to the weight and credibility that a jury gives to such expert's opinion.

(Citations and punctuation omitted.) *In the Interest of C. W. D.*, 232 Ga. App. 200, 206-207 (3) (a) (501 SE2d 232) (1998). The question of whether a witness is qualified to testify as an expert is a legal determination for the trial court which will not be disturbed absent a manifest abuse of discretion. *Dayoub v. Yates-Astro Termite Pest Control Co.*, 239 Ga. App. 578, 579 (1) (521 SE2d 600) (1999).

The record shows that the plaintiffs' expert witness had worked in the insurance industry for over 32 years as a claim representative, estimator, and manager, and that he had extensive experience in handling claims on behalf of an insurance company. He also had experience training independent insurance agents on how to handle and process claims and lawsuit documents. At trial, the witness testified generally about the relationship between insureds, insurance agents, and insurers; the agent's role in the processing of claims, the handling of lawsuits and the notification of insurers; the importance of properly handling lawsuits due to their time-sensitive nature; and the agent's duty to keep insureds informed about the status of pending claims and suits. The witness did not testify specifically about whether Yeomans breached its duty to the plaintiffs by failing to send the Cowart suit to Canal. Yeomans then cross-examined the expert, during which Yeomans elicited the expert's opinion regarding whether Yeomans had breached its duty to the plaintiffs. This testimony was, predictably, unfavorable to Yeomans. Later, Yeomans had the opportunity to argue the expert's alleged lack of experience to the jury.

Having reviewed the record, we find the trial court did not abuse its discretion in refusing to exclude the expert's testimony. *Dayoub v. Yates-Astro Termite Pest Control Co.*, 239 Ga. App. at 579 (1). Further, the weight and credibility of the expert's testimony was for the jury to determine, not this Court. OCGA § 24-9-80.

6. Yeomans claims the trial court erred in excluding evidence regarding the settlement agreement in the Cowart suit. Yeomans contends the evidence would have shown that the plaintiffs failed to mitigate their damages by taking steps to set aside the default judgment and that, by mishandling the Cowart suit, the plaintiffs were comparatively negligent. Yeomans failed, however, to cite to any legal authority supporting the admissibility of the settlement agreement to show comparative negligence. This argument is, therefore,

abandoned. See Court of Appeals Rule 25 (c) (2) (an enumeration of error which is not supported by citation to authority may be deemed abandoned).

Under the circumstances, we find that the trial court did not abuse its discretion in excluding evidence of the settlement agreement. *Stovall v. DaimlerChrysler Motors Corp.*, 270 Ga. App. at 791. See Division 3, supra (rejecting Canal's argument that the trial court abused its discretion in excluding the settlement agreement).

7. Yeomans contends the trial court erred in charging the jury regarding the amount of potential damages for which Yeomans could be responsible. Prior to trial, the court ruled that, if the jury found Yeomans breached a duty to the plaintiffs, the plaintiffs could recover the full amount of any damages which the jury concluded was warranted by the evidence, up to and including the full amount of the default judgment, plus interest and costs. At trial, the court instructed the jury as follows: "When an insurance agent breaches his duty to [an] insured, it may be liable to its insured beyond the policy limits to the full amount of the judgment."

In this case, Bertoch told Mr. Bowen that she would take care of the Cowart suit, but she decided not to send the notice to Canal. The jury was authorized to find that, in failing to notify Canal, Bertoch breached her duty to Bowen Tree Surgeons and that her negligence caused Bowen Tree Surgeons to suffer a default judgment when Canal failed to provide a defense for the business. Therefore, the plaintiffs' damages in this case, the amount of the default judgment, were attributable to Bertoch's negligence, not from the lack of insurance coverage for the claim. Accordingly, we find that the trial court did not err in giving the jury instruction. See *Cincinnati Ins. Co. v. MacLeod*, 259 Ga. App. 761, 765 (4) (a) (577 SE2d 799) (2003) (where a jury later found the insured was not negligent, the insured would have suffered no damages if the insurer had provided a timely defense, so the damages were attributable to the insurer's failure to defend); *Atlanta Cas. Ins. Co. v. Gardenhire*, 248 Ga. App. 42, 44 (2) (545 SE2d 182) (2001) (where an insurer wrongfully fails to offer a defense, "it may be liable to its insured beyond the policy limits to the full amount of the judgment") (citations omitted); cf. *Robinson v. J. Smith Lanier & Co. &c.*, 220 Ga. App. 737, 738 (1) (470 SE2d 272) (1996) (an insurance agent failed to secure an insurance policy on behalf of its client, so the client had no insurance for a loss that would have otherwise been covered; in dicta, this Court held that, because the client's only harm resulting from the agent's negligence was the lack of insurance to cover the loss, the insurance agent was liable only to the limit of the policy).

*Judgment affirmed. Phipps, Mikell and Adams, JJ., concur. Andrews, P. J., Johnson, P. J., and Blackburn, P. J., dissent.*

ANDREWS, Presiding Judge, dissenting.

Because, under the rules of construction pertaining to insurance contracts, I do not believe there is any way that Black's wreck with the Cowarts was covered under the Commercial General Liability policy issued by Canal Indemnity Company (Canal) to Bowen Tree Surgeons, Inc. (Bowen Tree), I must respectfully dissent because the trial court improperly granted Bowen Tree's motion for partial summary judgment on the coverage issue. Further, even if the policy could be said to provide coverage, Bowen Tree failed to prove that Yeomans & Associates, Inc. (Yeomans) was the agent of Canal for purposes of notice under the policy, and Canal was entitled to a directed verdict on this ground.

In addition to the facts set out in the majority opinion, the following facts are pertinent. Upon talking with Bertoch at Yeomans, George Bowen and Bertoch both were surprised that Bowen was sued, since Black was driving his personal car and was not on the job at the time of the accident. Bowen Tree had both the Canal policy and a company fleet motor vehicle policy through Auto-Owners Insurance Company. Following Bertoch's submission of the lawsuit to Auto-Owners, which she believed was the only possibly applicable policy, Auto-Owners sent Yeomans and Bowen certified letters denying coverage. That letter advised George Bowen that, since his employee was driving his own car at the time of the accident, "there is no coverage under your business automobile policy[,]" and recommended that Bowen contact Black's insurance carrier to see if it would provide a defense. If not, then Bowen would "need to have your own attorney file an answer to protect your interest."

Bowen did not further contact Yeomans regarding this litigation, retain his own attorney, contact Black's carrier, or attempt to contact Canal directly. Instead, Bowen allowed the Cowarts' suit against Bowen Tree to go into default. After filing a motion to set aside the default judgment, Bowen and Bowen Tree then settled the Cowarts' claim, withdrew the motion to set aside, and sued Yeomans and Canal. Canal was not notified of the settlement by Bowen Tree prior to the suit against Canal.

The Declarations page of the Canal policy lists as the "named insured" "Bowen Tree Surgeons, Inc."

"Section I — Coverages" of the Canal policy provides:

1. Insuring Agreement a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" *to which this insurance applies*. We will have the right and duty to defend the insured against any "suit" seeking those damages. *However, we will have no duty to defend the insured against any*

*"suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .* b. This insurance applies to "bodily injury" and "property damage" only if: (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; . . .

(Indention omitted; emphasis supplied.)

"Section II — Who is An Insured" provides:

1. If you are designated in the Declarations as: . . . d. An organization other than a partnership, joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders. 2. Each of the following is also an insured: a. *Your employees*, other than either your executive officers . . . or your managers . . . *but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.*

(Indention omitted; emphasis supplied.)

"Section IV — Commercial General Liability Conditions" provides:

. . .

2. Duties In The Event of Occurrence, Offense, Claim Or Suit. a. You must see to it that we are notified as soon as practicable of an "occurrence" . . . which may result in a claim. . . . b. If a claim is made or "suit" is brought against any insured, you must (1) Immediately record the specifics of the claim or "suit" and the date received; and (2) Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable. . . . d. *No insured will, except at that insureds' own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.*

(Indention omitted; emphasis supplied.)

George Bowen testified that, although Bowen Tree received a copy of the Canal policy, the secretary (his wife) or someone in the office would handle that, he only did outside field work.

Yeomans obtained the commercial general liability policy for Bowen Tree through its brokerage firm, the Strickland General

Agency. Yeomans had no authority to bind coverage, but had "to bind it through Strickland who in turn issue[d] the policy." Strickland had multiple wholesale lines of insurance to choose from and issued the Canal policy. Yeomans never had a copy of the Canal policy, only the Declarations page, but it was her understanding that the Canal policy only applied when the insured was "working on a job."

On the day of Black's collision with the Cowarts, George Bowen went to the accident scene. Because Black was driving his own vehicle and was not working, George Bowen did not contact Yeomans until after the Cowarts' suit was served on him. He never contacted his workers' compensation carrier "[b]ecause the man wasn't on my job. . . ." George Bowen stated unequivocally that he had never purchased any kind of insurance that would provide insurance to one of his employees involved in an accident driving his own car.

By its own very clear terms, as set out above, the Canal policy did not provide coverage for the Black/Cowart accident. That George Bowen did not become familiar with the terms of the policy is of no avail to him.

> First, "that the insured was under a duty to examine its policy and ascertain for itself what coverage it had is well settled. The insured was not only free to examine the contract, it was under a duty to do so, and if it had done that it would have observed just what coverage it provided to it. If (the policy) was not what it wished to have it could have renegotiated . . . or . . . returned it as unacceptable and negotiated a contract with another company. . . . If the policy issued was essentially different from the one that the insured desired, the remedy . . . would have been to reject, when tendered, the policy as written. . . . If the applicant neglects to examine the policy delivered to it the contract is binding." (Citation and punctuation omitted.) *Savannah Laundry &c. Co. v. Home Ins. Co.*, 189 Ga. App. 420, 422-423 (2) (376 SE2d 373) (1988); see also *Hartford [Ins. Co. &c. v. Franklin*, 206 Ga. App. 193 (424 SE2d 803) (1992)].

*Kirby v. Northwestern Nat. Cas. Co.*, 213 Ga. App. 673, 676 (2) (445 SE2d 791) (1994). See also *MacIntyre & Edwards, Inc. v. Rich*, 267 Ga. App. 78, 79 (1) (599 SE2d 15) (2004).

I believe that Canal is correct that the trial court erred in granting Bowen Tree's motion for summary judgment on the issue of coverage.

Also, even assuming arguable coverage under the Canal policy, Bowen Tree failed to provide the required notice to Canal; failed to

prove that Yeomans was acting as a dual agent of Canal and Bowen Tree; and breached the Canal policy by settling the Cowarts' suit without Canal's knowledge.

Independent agents or brokers are generally considered the agent of the insured, not the insurer. *Kirby*, supra at 676 (2); *European Bakers v. Holman*, 177 Ga. App. 172, 173 (2) (338 SE2d 702) (1985). In the present case, I believe that the evidence demanded the conclusion that Yeomans was acting as an agent for Bowen Tree and George Bowen, not for Canal. According to Bertoch's testimony, in addition to that set out above, Yeomans was an independent insurance agency which represented several insurance companies and had direct contracts with a number of automobile insurance carriers. Yeomans had no contract with Canal and nothing in writing from Canal authorizing Yeomans to accept claims or handle lawsuits on Canal's behalf. Yeomans obtained Canal coverage only by using the Strickland General Agency, with whom Yeomans had a written contract. The Yeomans/Strickland contract specifically states that Yeomans "will represent and act as agent for my insureds only in all dealings with SGA and have *absolutely no agency or binding authority on business transacted with SGA for any insurer(s) represented by SGA unless otherwise agreed in writing.*" (Emphasis supplied.)

When handling claims for Bowen Tree under the Canal policy, Yeomans would send the claim to Strickland, not Canal. Bertoch stated that Yeomans had no agency relationship with Canal, that any filing or sending of claims for Bowen Tree was done solely as an accommodation to Bowen Tree and George Bowen, and that Bowen Tree's checks for insurance premiums were made payable to Yeomans, which took its commission and forwarded Canal's premium portion to Strickland.

" 'In order to impose liability pursuant to the doctrine of apparent or ostensible agency, the evidence must show: (1) the apparent principal represented or held out the apparent agent; and (2) justifiable reliance upon the representation led to the injury.' *Whitaker v. Zirkle*, 188 Ga. App. 706, 709 (2) (374 SE2d 106) (1988)." *Kirby*, supra at 678 (2). There has been no showing by Bowen Tree that Yeomans functioned as both agent for the insured and the insurer. Compare *Byrne v. Reardon*, 196 Ga. App. 735, 736 (4) (397 SE2d 22) (1990).

Therefore, I believe Canal was entitled to a directed verdict on this ground. *Southeastern Express Systems v. Southern Guaranty Ins. Co. of Ga.*, 224 Ga. App. 697, 700-701 (482 SE2d 433) (1997); see *Park Pride Atlanta v. City of Atlanta*, 246 Ga. App. 689, 694-695 (541 SE2d 687) (2000).

I am authorized to state that Presiding Judge Johnson joins in this dissent.

BLACKBURN, Presiding Judge, dissenting.

Because I believe that neither the insured, Bowen Tree Surgeons, Inc., nor the insurer, Canal Indemnity, intended the policy in question to cover an auto accident caused by an off-duty employee of Bowen while driving his personal vehicle, I must respectfully dissent from the opinion of the majority.

Greatly summarized, the record shows that Bowen carried two policies of insurance: a commercial general liability policy issued by Canal and a motor vehicle liability policy issued by Auto-Owners Insurance Company. On December 18, 2000, Michael S. Black, an off-duty employee of Bowen driving his personal car, crashed into Joel and Brenda Cowart, thereby injuring them. The Cowarts subsequently filed suit against Bowen and Black, and Bowen notified Lisa Bertoch at Yeomans & Associates Agency, Inc., an independent insurance agency, about the lawsuit. Bowen had a longstanding practice of giving such notifications to Bertoch, who, in turn, relayed the notifications to Bowen's insurers.

When Bowen notified Bertoch of the Cowarts' suit, she relayed this information only to Auto-Owners, not Canal. Auto-Owners then notified Bowen that it would neither cover Black's accident nor defend Bowen against the Cowarts. Bowen took no subsequent action, and, on April 19, 2002, a default judgment was entered in favor of the Cowarts in the amount of $1,250,000. On May 8, 2003, Bowen filed a complaint against Canal and Yeomans, contending that the commercial general liability policy with Canal covered the accident in question.

On June 9, 2003, the trial court granted summary judgment to Canal on Bowen's claims, finding that Canal was never given proper notice of the Cowarts' suit because Bertoch was not an authorized agent of Canal as a matter of law. On November 21, 2003, this Court reversed the trial court's finding on the issue of notice, limiting our review strictly to the issue of whether a question of fact remained regarding Bertoch's authority to accept claims on Canal's behalf. See *Bowen Tree Surgeons v. Canal Indem. Co.*[8] In that opinion, we also remanded the case with direction to the trial court, instructing it to consider whether Bowen was entitled to coverage under the terms of the policy. On the same day that we issued this opinion, Bowen entered into a settlement agreement with the Cowarts on November 21, 2003 whereby they agreed to limit their recovery of the default judgment to, among other things, any sums Bowen might be entitled to under the Canal policy.

---

[8] *Bowen Tree Surgeons v. Canal Indem. Co.*, 264 Ga. App. 520 (591 SE2d 415) (2003).

On remand, Bowen filed for summary judgment, contending that the Canal policy covered its employee's accident as a matter of law. On March 31, 2004, the trial court granted summary judgment in favor of Bowen, finding that the accident was an "occurrence" covered by the policy. Given the nature of the overlapping insurance policies issued to Bowen, however, this ruling was erroneous.

In our recent case of *Strickland v. Auto-Owners Ins. Co.*,[9] we considered the standards applicable to overlapping commercial general liability policies and motor vehicle liability policies issued to motor common carriers. In that case, we observed:

> Because of the many different arrangements of the drivers and equipment controlling the hauling of their freight loads, it is a common industry practice for motor common carriers . . . to obtain two separate policies of insurance to provide seamless coverage for different risks: (1) a commercial general liability policy such as the one in question, which excludes motor vehicle liability and (2) a separate policy to cover motor vehicle liability exposure. To prevent duplicative premiums and overlapping coverage, exclusions are included in the commercial general liability policy to make it clear that, although it covers most accidents in the workplace, it explicitly does not cover motor vehicle collisions.

Id. at 663.

Just such an arrangement was used in this case. Bowen purchased a policy from Auto-Owners to cover motor vehicle collisions and liability and it purchased a separate commercial general liability policy from Canal under which such collisions were excluded.

In doing so, Bowen

> fixed the limits of its risk by use of the motor vehicle exclusion language. . . . [Bowen] knowingly accepted the policy with this clear and unambiguous exclusion and obtained motor vehicle coverage from [Auto-Owners] to cover the specifically excluded risk in the [Canal] policy. The intent of the policy, coupled with the exclusion, controls coverage, not how artfully a claim is drafted to bring inclusion within the coverage language and to avoid the exclusion language. Thus, the underlying facts and circumstances of the claim, rather than the theory of the claim, determine whether or not the exclusion applies.

---

[9] *Strickland v. Auto-Owners Ins. Co.*, 273 Ga. App. 662 (615 SE2d 808) (2005).

(Citations omitted.) *Grain Dealers Mut. Ins. Co. v. Pat's Rentals.*[10]

*Grain Dealers* further explains that "the expectations of the insured and the insurers were that there would be two policies of insurance without overlapping coverage and that each insurer would accept a premium for a specific risk insured against as insurance specialists." Id.

The rationale of *Grain Dealers*, supra, and *Strickland*, supra, apply here. Based on the clear language of the policies issued to Bowen, it is evident that seamless, nonduplicative coverage was purchased, pursuant to which Bowen received motor vehicle coverage through Auto-Owners and other coverage through Canal. Accordingly, the trial court erred by finding that the Canal policy covered the motor vehicle accident between Black and the Cowarts.

With regard to any duty of Canal to defend Bowen under its policy, we note that Bowen chose to settle its case following a default judgment rather than contesting that judgment or taking other action to overturn it. Following this settlement, there would have been no litigation in which Canal would have needed to defend Bowen, and, therefore, Bowen's claims regarding such a duty to defend became moot. Moreover, we note that the accident in question "is expressly excluded under the motor vehicle exclusion of the [Canal] policy. . . . Thus, [Canal] has no duty to defend or to indemnify against general and special damages." *Grain Dealers*, supra at 855 (a).

DECIDED JULY 15, 2005 —
RECONSIDERATIONS DENIED JULY 28, 2005 — ▮▮▮▮▮▮▮

*Michael T. Thornton*, for Yeomans & Associates Agency, Inc.

*Crim & Bassler, Harry W. Bassler, Joseph M. Murphey*, for Canal Indemnity Company.

*Bell & Bell Associates, David B. Bell, Sharon B. Enoch*, for Bowen Tree Surgeons, Inc. et al.

---

[10] *Grain Dealers Mut. Ins. Co. v. Pat's Rentals*, 228 Ga. App. 854, 856 (a) (492 SE2d 702) (1997).