A09A0724. VIDEO WAREHOUSE, INC. v. SOUTHERN TRUST INSURANCE COMPANY.

(678 SE2d 484)

BLACKBURN, Presiding Judge.

In this insurance coverage action, Video Warehouse, Inc. appeals a summary judgment awarded to Southern Trust Insurance Company ("Southern"), contending that a disputed issue of material fact existed as to whether two insurance policies excluded coverage for certain claims asserted against Video Warehouse. Finding no issue of disputed material facts, we agree with the trial court that the insurance contracts here plainly excluded the claims asserted against Video Warehouse. Accordingly, we affirm.

Summary judgment is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment. *Matjoulis v. Integon Gen. Ins. Corp.*[1]

The undisputed evidence shows that in July 2006, Video Warehouse was sued for personal injuries and wrongful death arising out of an automobile accident involving one of its employees (the "underlying action"). The complaint alleged that in December 2005, the Video Warehouse employee was driving his own vehicle to a Video Warehouse store to perform some improvements on the store. Claiming that the employee was acting within the scope of his employment in furtherance of his employer's business, the complaint alleged that he crossed the centerline and struck a logging truck head-on. The accident severely injured the truck driver, who died when his truck burst into flames.

The complaint first asserted a claim of vicarious liability against Video Warehouse. Alleging that the employee had a bad driving record when hired and that the employee exhibited further bad driving behavior during his employment with Video Warehouse, an amended complaint added a claim of negligent hiring and retention. Video Warehouse denied the allegations of negligence and further denied that its employee was acting within the scope of his employment or in furtherance of its business.

At the time of the accident, Video Warehouse was the named

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

insured under three separate insurance policies issued by Southern: automobile, business liability, and umbrella. Arguing that none of the policies covered the liability asserted in the complaint against Video Warehouse, Southern initiated the current lawsuit, petitioning for a declaratory judgment that it was not liable for any potential judgment against Video Warehouse in the underlying action. Attached to the petition were copies of the policies and of the underlying complaint, which Video Warehouse in its answer admitted were true copies. Based on this evidence, Southern moved for summary judgment, arguing that the undisputed facts showed that none of the policies covered the claims asserted in the underlying action. Video Warehouse conceded that the automobile policy it had with Southern did not cover the claims, but it argued that the business liability policy and the umbrella policy did. The trial court found that none of the policies covered the claims and accordingly entered summary judgment in Southern's favor, which judgment Video Warehouse appeals.

The critical issue presented is whether the business liability policy and the umbrella policy covered the claims asserted against Video Warehouse in the underlying action. In determining this issue, we employ the following legal principles:

> Where the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the insurance contract alone to ascertain the parties' intent. The contract is to be considered as a whole and each provision is to be given effect and interpreted so as to harmonize with the others. Furthermore, an insurance company may fix the terms of its policies as it wishes, provided they are not contrary to law, and it may insure against certain risks and exclude others. Though exclusions in insurance policies are strictly construed against the insurer, one that is plain and unambiguous binds the parties to its terms and must be given effect, even if beneficial to the insurer and detrimental to the insured. We will not strain to extend coverage where none was contracted or intended.

(Citation and punctuation omitted.) *Fidelity Nat. Title Ins. Co. &c. v. OHIC Ins. Co.*[2] See *York Ins. Co. v. Houston Wellness Center*.[3] The

---

[2] *Fidelity Nat. Title Ins. Co. &c. v. OHIC Ins. Co.*, 275 Ga. App. 55, 57 (619 SE2d 704) (2005).

[3] *York Ins. Co. v. Houston Wellness Center*, 261 Ga. App. 854, 854-855 (583 SE2d 903) (2003).

YALE LAW LIBRARY

construction of an unambiguous insurance contract is a question of law for the court. *Hunnicutt v. Southern Farm &c. Ins. Co.*[4]

1. *The business liability policy.* The business liability policy obligated Southern to pay for those sums that Video Warehouse became legally obligated to pay as damages because of bodily injury (which included death) caused by an accident. However, the policy expressly excluded from its coverage bodily injury "arising out of the . . . use . . . of any . . . auto . . . owned or operated by . . . any insured." The policy defined "insured" to include Video Warehouse's employees "but only for acts within the scope of their employment by [Video Warehouse] or while performing duties related to the conduct of [Video Warehouse's] business."

This operative language of the policy is plain and unambiguous, particularly as applied to the facts of the case at hand. Setting aside the exclusionary language for the moment, we first address coverage. With regard to the present declaratory judgment action, Southern would be liable only for those sums that Video Warehouse became legally obligated to pay as a result of the claims of the underlying lawsuit. The two claims against Video Warehouse in that lawsuit are vicarious liability and negligent hiring and retention. For Video Warehouse to be liable under the theory of vicarious liability (also known as respondeat superior), the employee who caused the accident had to be acting within the scope of his employment and while he was engaged in Video Warehouse's business. See *Gassaway v. Precon Corp.*[5] For Video Warehouse to be liable for this particular car accident under the theory of negligent hiring and retention (where the allegation is that the employee had a bad driving record and where the injured truck driver had no relationship to Video Warehouse or its employee but was merely a member of the general public on the public highway), the accident could not have occurred while the employee was simply commuting to work but had to occur while the employee was engaged in Video Warehouse's business. See *Lear Siegler, Inc. v. Stegall.*[6] Cf. *TGM Ashley Lakes, Inc. v. Jennings.*[7]

The point is, for liability to attach to Video Warehouse under this particular complaint, the employee had to be acting within the scope of his employment or performing duties related to the conduct of Video Warehouse's business. Yet, if the employee was so acting or

---

[4] *Hunnicutt v. Southern Farm &c. Ins. Co.*, 256 Ga. 611, 612 (4) (351 SE2d 638) (1987).

[5] *Gassaway v. Precon Corp.*, 280 Ga. App. 351, 352-353 (634 SE2d 153) (2006).

[6] *Lear Siegler, Inc. v. Stegall*, 184 Ga. App. 27, 28-29 (360 SE2d 619) (1987).

[7] *TGM Ashley Lakes, Inc. v. Jennings*, 264 Ga. App. 456, 460-462 (1) (b) (590 SE2d 807) (2003).

was performing such duties, then by definition he was an "insured" under the policy, and under the exclusionary clause, the policy expressly excluded from coverage bodily injury arising out of the use of an automobile owned or operated by such an insured. Thus, it was irrelevant that an issue of fact existed as to whether the employee was acting within the scope of his employment and whether he was engaged in Video Warehouse's business, because if he was not so acting and was not so engaged, then Video Warehouse would not be liable under the claims alleged in the underlying complaint and therefore coverage under Southern's business liability policy would not be triggered in the first place. If he was so engaged, then Southern's business liability policy expressly excluded from coverage any claim arising from an automobile accident involving the employee's operation of his vehicle. Acknowledging this logic, the trial court in deciding summary judgment here stated it would not rule whether the employee was acting within the scope of his employment or was otherwise engaged in Video Warehouse's business but instead held that in any case, the policy would not cover the injuries arising from the automobile accident. We agree with this ruling.

Nevertheless, Video Warehouse argues that the exclusionary clause does not expressly refer to "negligent hiring and retention" claims, and that therefore under *Guaranty Nat. Ins. Co. v. Brock*,[8] such claims were not excluded. This argument ignores that the clause expressly excluded from coverage bodily injury "arising out of" the use of any automobile owned or operated by any insured. The Supreme Court of Georgia has interpreted this same "arising out of" language as excluding *all* claims for injuries caused by the excluded acts, *regardless* of the theory of tort liability. *Continental Cas. Co. v. HSI Financial Svcs.*[9] "[T]he exclusionary clause is focused solely upon the genesis of [the underlying plaintiff's] claims — if those claims *arose out of* [the excluded acts], as they did, then coverage need not be provided." (Emphasis in original.) Id. at 262. Claims arise out of excluded conduct when "but for" that conduct, there could be no claim against the insured. Id. See *BBL-McCarthy, LLC v. Baldwin Paving Co.*[10] ("[w]e have also similarly construed 'arising out of' as meaning 'had its origins in,' 'grew out of,' or 'flowed from' ").

We have acknowledged this "very broad interpretation to the words 'arose out of' . . . found in the exclusion clauses of different

---

[8] *Guaranty Nat. Ins. Co. v. Brock*, 222 Ga. App. 294, 296-297 (2) (474 SE2d 46) (1996).

[9] *Continental Cas. Co. v. HSI Financial Svcs.*, 266 Ga. 260, 261-263 (466 SE2d 4) (1996).

[10] *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494, 498 (1) (a) (646 SE2d 682) (2007).

policies" and have accordingly excluded coverage for any tort theories, regardless of their nomenclature, that seek recovery for injuries that have their origin in the excluded conduct. *Eady v. Capitol Indem. Corp.*[11]

> The intent of the policy, coupled with the exclusion, controls coverage, not how artfully a claim is drafted to bring inclusion within the coverage language and to avoid the exclusion language. Thus, the underlying facts and circumstances of the claim, rather than the theory of the claim, determine whether or not the exclusion applies.

*Grain Dealers Mut. Ins. Co. v. Pat's Rentals, Inc.*[12] See *Strickland v. Auto-Owners Ins. Co.*[13] In *Grain Dealers Mut. Ins. Co.*, which involved an exclusionary clause nearly identical to that in the present case, we specifically held that "[s]uch exclusion is much broader than the exclusion under *Brock*[, supra, 222 Ga. App. at 296-297 (2)] and would include not only negligent entrustment of the vehicle but also negligent hiring or retention of the driver." Supra, 228 Ga. App. at 855 (a). See *Capitol Indem. v. Brown.*[14]

For these reasons, Video Warehouse's argument that the business liability policy covered the additional claim of negligent hiring and retention fails, as those claims arose out of the excluded conduct that resulted in the accident. See *Jefferson Ins. Co. &c. v. Dunn.*[15]

2. *The umbrella policy.* The umbrella policy contained the following exclusionary clause: "Except to the extent coverage is provided in underlying insurance, this insurance does not apply to bodily injury ... arising out of the ... use ... of any auto[ w]hile away from premises you own, rent, or occupy. ..." (Emphasis omitted.) Based on this language, the umbrella policy excluded the injuries here, as this automobile accident occurred away from Video Warehouse's premises, and as the underlying policies (the automobile policy and the business liability policy) did not cover the claims.

*Judgment affirmed. Adams and Doyle, JJ., concur and concur specially.*

---

[11] *Eady v. Capitol Indem. Corp.*, 232 Ga. App. 711, 714 (502 SE2d 514) (1998).

[12] *Grain Dealers Mut. Ins. Co. v. Pat's Rentals, Inc.*, 228 Ga. App. 854, 856 (a) (492 SE2d 702) (1997), rev'd on other grounds, 269 Ga. 691 (505 SE2d 729) (1998).

[13] *Strickland v. Auto-Owners Ins. Co.*, 273 Ga. App. 662, 663-664 (1) (615 SE2d 808) (2005).

[14] *Capitol Indem. v. Brown*, 260 Ga. App. 863, 865-866 (1) (581 SE2d 339) (2003).

[15] *Jefferson Ins. Co. &c. v. Dunn*, 269 Ga. 213, 215-216 (496 SE2d 696) (1998).

DOYLE, Judge, concurring specially.

Although I concur fully in all that is said in the majority opinion, on reconsideration I write separately to address Video Warehouse, Inc.'s argument that we erred in affirming the trial court's finding that the insurance policy at issue did not cover the automobile accident involving Video Warehouse's employee.

Video Warehouse contends that the facts in this case are identical to those of *Yeomans & Assoc. Agency v. Bowen Tree Surgeons*,[16] in which an employer was sued over an automobile accident involving his employee. Although the insurance policy in *Yeomans* contained similar wording to the policy in the instant case, the procedural posture of *Yeomans* is distinguishable.

In *Yeomans*, we held that, "under the circumstances presented," an insurance company breached its duty to the insured by failing to defend the insured when, at the time the personal injury complaint was filed, the insurance company was put on notice of facts that possibly could trigger coverage under the policy.[17] In the instant case, however, Southern Trust Insurance Company already had undertaken the defense of Video Warehouse, and the trial court was asked in a declaratory judgment action to determine whether Southern Trust ultimately would be liable for any judgments against Video Warehouse with regard to the underlying event.[18] Accordingly, *Yeomans* is inapposite and does not require a different result in this case.

I am authorized to state that Judge Adams joins in this special concurrence.

DECIDED MARCH 30, 2009 —
RECONSIDERATION DENIED MAY 13, 2009 █

*Young, Thagard, Hoffman, Smith & Lawrence, John H. Smith, Jr.*, for appellant.

*Bullard & Wangerin, Daniel Bullard IV, Erin R. Smith, Page, Scrantom, Sprouse, Tucker & Ford, J. Ronald Mullins, Jr.*, for appellee.

---

[16] 274 Ga. App. 738 (618 SE2d 673) (2005).

[17] See id. at 740, 745. The insured failed to answer the personal injury complaint, and a default judgment was entered against them. Thereafter, the insured filed a claim against the insurance company for failure to defend the action.

[18] See id. at 741 (1) (a); see also *Penn-America Ins. Co. v. Disabled American Veterans*, 224 Ga. App. 557, 559 (481 SE2d 850) (1997) ("an insurer's duty to pay and its duty to defend are separate and independent obligations") (citations and punctuation omitted).